GOVERNOR SMITH, DECEASED, EMPLOYER, MYRTLE SMITH, BEATRICE SMITH, FRED, JOHN, AND DONALD SMITH, DEPENDENTS, RESPONDENTS, v. JAMES BRAUDIS, DOING BUSINESS AS BRAUDIS COAL COMPANY, EMPLOYER, BITUMINOUS CASUALTY CORPORATION, INSURER, APPELLANTS.—123 S. W. (2d) 223.

St. Louis Court of Appeals. Opinion filed January 3, 1939.

*Albert I. Graff* and *Lawrence G. Lally* for appellants.

*Edward C. Friedewald* and *Fred McCoy,* for respondents.

BECKER, J.—This is a proceeding under the Missouri Workmen's Compensation Act, sections 3299-3376, Revised Statutes of Missouri 1929 (Mo. Stat. Ann., secs. 3299-3376, pp. 8229, 8294), against James Braudis, doing business as Braudis Coal Company, employer, and the Bituminous Casualty Corporation, insurer, for the death of Governor Smith, alleged to have been an employee of Braudis, whose death it is claimed resulted from an accident arising out of and in the course of his employment.

The referee who originally heard the claim denied compensation on the ground that Smith was not in the employ of Braudis at the time of his accident and death.

Upon review by the full commission a finding was made that "we find from the evidence that the accident occurred in the State of Illinois, and we further find that the claimant has failed to prove that the alleged contract was made in the State of Missouri. Therefore we are without jurisdiction. [Sec. 3310 (b), R. S. Mo. 1929 (Mo. Stat. Ann., sec. 3310 (b), p. 8245).]"

On appeal the circuit court reversed the award of the commission and remanded the cause on the ground that the facts found by the commission do not support the award, and that there was not sufficient competent evidence in the record to warrant its findings. The alleged employer and insurer, defendants below, in due course bring this appeal.

The sole question presented by appellants is whether the findings and award of the compensation commission are supported by sufficient competent evidence. If so, the circuit court erred in reversing the award of the commission.

Whether or not a case comes within the provisions of the Missouri Workmen's Compensation Act is a question of fact. [Kemper v. Gluck, 327 Mo. 733, 39 S. W. (2d) 330, 332.] . The death of the alleged employee occurred in Illinois and therefore to bring the case within the Act claimants had the burden of proving, among other things, that there was a Missouri contract of employment of the deceased by the alleged employer. [Sec. 3310 (b), R. S. Mo. 1929 (Mo. Stat. Ann., sec. 3310 (b), p. 8245); State ex rel. Weaver v. Missouri Workmen's Compensation Commission, 339 Mo. 150, 95 S. W. (2d) 641.] On this question the commission found that "claimant has failed to prove that the alleged contract of employment was made in Missouri."

According to the record James Braudis was in the coal hauling business operating eight or nine trucks, doing business in the name of the Braudis Coal Company. His business was located in the City of St. Louis. He bought coal at the mines in the State of Illinois and hauled it by trucks to where it was delivered to his customers. Braudis' method of business was to employ drivers for his trucks and he required each driver to employ a helper. Braudis paid the drivers on the basis of two dollars for a load of ten tons, which they obtained at the mines and delivered to his customers in St. Louis. The drivers in turn employed and paid their own helpers.

There is no dispute but that one Louis Hill was an employee of the Braudis Coal Company and that while driving one of the Braudis coal trucks along the public highway in the State of Illinois, on his way to get a load of coal at the mine, his truck had a head-on collision with another truck, resulting in the death of said Hill, and that of Mathew Lee Murray and Governor Smith, who were riding on the truck with Hill at the time.

Braudis testified that Hill had been the helper of one of his drivers at a time when he needed another driver, and he accordingly offered Hill the job. As to the instructions which he gave his drivers when he employed them, Braudis said, "all the instruction I ever gave a driver was to procure himself a helper."

"Q. Procure himself a helper? A. Yes.

"Q. Now, on the occasion that you might have a truck available, and you were going to put on a new driver, would you give the driver a truck if he had no helper? A. Well, I actually put it up to him in a way; I always gave the man the job and then I told him, the man himself, to procure himself a helper."

Braudis further testified that he could not remember whether or not there was any one with Hill at the time that he engaged Hill

to drive a truck; that he did not employ nor pay any helper for Hill; that it was customary for Hill to take his truck to his home in East St. Louis, Illinois at night, and "then early in the morning go direct from his home in East St. Louis to the mines." Braudis testified that he had observed some one riding on the truck with Hill, and on several occasions had seen two men on the truck with him; that on one occasion he had told Hill that two men riding in the cab in addition to himself "makes it pretty crowded, and I suggested that he leave one of them off;" that Hill averaged two or three loads a day and earned about twenty dollars per week, and that "any pay the helper received, he received from the driver."

Harry Bagley, a witness for claimants, testified that he was a driver for the Braudis Coal Company and lived in East St. Louis, Illinois; that Hill had been his helper for about six months prior to the time that Hill himself got a truck; that he drove a ten ton truck and got two dollars per load. "Of course out of that, I would have to pay my helper and that left me $1.50. I would pay the helper fifty cents for ten tons if he didn't have to shovel it off the ground;" that during the two years that he had been driving a truck for the company he had always hired and fired his own helpers. He was asked as to whether he hired Hill, and he answered: "I hired him in Illinois; I live in Illinois. . . . He came to my house and asked me if I needed a helper." "Q. That was where? A. 109 Courtland Place in East St. Louis, Illinois."

Clarence Moore, a witness for claimants, testified that he was employed as a driver hauling coal for Braudis Coal Company for three years, and his testimony was to the same effect as that of Harry Bagley, the preceding witness—that the drivers of the trucks hired and discharged their own helpers, as well as paid them; that "you've got to have a helper as you can't do the work yourself;" that on November 11, 1936, he saw Hill on the truck he was driving for Braudis Coal Company, accompanied by two men.

Ernest Smith testified as a witness for claimants, that Governor Smith was his brother and lived with him on Bond Avenue in East St. Louis, Illinois; that one day Louis Hill, whom he knew, came over to his home in East St. Louis, Illinois, and that he heard Hill tell Smith that "there is a boy got a truck over there and he needs a helper—I will have to carry you over to St. Louis over to the office—when I come back to go to the mine Monday I will carry you over there. . . . I later saw them leave the house. He came back from the mine and was on the truck with Hill. They were going east on Bond Avenue. I saw Governor Smith in the cab of the truck when I was sitting on the porch."

Here then we have no direct evidence upon the question of the alleged employment of Governor Smith as a helper by Louis Hill, driver of the truck for James Braudis, doing business as Braudis

Coal Company, and the facts and circumstances which have any bearing upon this question are meager and unsatisfactory. Clearly claimants must, upon the record before us, be held to have failed to carry the burden resting upon them to show a contract of employment made in Missouri. [Adams v. Continental Life Ins. Co., 340 Mo. 417, 101 S. W. (2d) 75.]

We have given consideration to respondents' complaint that the commission improperly excluded evidence, the admission of which would have been material on the question of the employment of Smith by the deceased Hill.

It is true that at one point in the case, when James Braudis was on the stand as a witness adduced by claimants, the referee sustained an objection to the witness answering the question, "Do you recall that you told Mr. Hill that if he would get himself a helper you would give him a truck; that you had a truck available?" Whereupon counsel for claimants offered to prove by this witness, if permitted to answer the question, "that such a conversation took place; that he offered Hill a truck to drive if he secured a helper." The error, if any, in the referee's ruling on this matter cannot be viewed as prejudicial to claimants' case since the witness Braudis, in other parts of his testimony, covered the matter fully. For instance, when asked as to whether he recalled the conversation that took place on the occasion that he hired Hill, Braudis answered: "Well, I don't recall the exact conversation; I knew I needed a driver so I offered him the job; that's all." At another place Braudis was asked whether he had any particular recollection as to the morning Hill actually took a truck out for him, to which Braudis answered: "No, I don't." And further that he did not remember specifically whether or not Hill had any one with him on that morning. Braudis testified further that the instruction which he gave all of his drivers was "to procure himself a helper;" that he actually "put it up to him in a way; I always gave the man the job and I told him—the man himself —to procure himself a helper." And Braudis testified that he did not remember whether or not there was any one with Hill when he first came to get a truck, and that "in fact I don't remember that day at all."

In this state of the record we are of the view that the point sought to be made that by the exclusion of testimony there had been error committed prejudicial to claimants' rights is without merit.

It follows that the conclusion reached by the commission, to the effect that the claimants have failed to prove that the alleged contract of employment was made in Missouri, is a finding supported by the facts and circumstances outlined by the evidence in the record before us.

In this situation the judgment of the commission that compensation must be denied should have been affirmed by the circuit court.

The judgment of the circuit court is therefore reversed and the cause remanded with directions to enter judgment affirming the award of the Missouri Workmen's Compensation Commission. *Hostetter, P. J.,* and *McCullen, J.,* concur.