**Andrew PETERSEN, Deceased, Plaintiff-Respondent,**

v.

**CENTRAL PATTERN CO. and Insurance Co. of North America, Defendants-Appellants.**

No. 37345.

Missouri Court of Appeals, St. Louis District, Division Two.

Jan. 17, 1978.

Robert E. Wieland, Robertson, Ely & Wieland, St. Louis, for defendants-appellants.

Merle L. Silverstein, Julius Berg, C. Lawrence Mueller, St. Louis, for plaintiff-respondent.

RENDLEN, Judge.

Central Pattern Company and the Insurance Company of North America (employer and insurer respectively) appeal from a judgment of the circuit court reversing the Workmen's Compensation Commission decision denying the claim for compensation of Ralph A. Petersen, administrator of the Andrew Petersen estate.

Ralph Petersen's sixteen year old son, Andrew, sustained injuries in an accident March 3, 1968, on the Rocklin Farm near Rockridge, Illinois, eventuating in his death the following year. As administrator of his son's estate, Petersen made claim under Missouri's Workmen's Compensation Law, Chapter 287 RSMo 1969, for temporary total disability and benefits for medical, hospital and surgical services under § 287.140.[1] The Referee found Andrew's death resulted directly from the accident of March, 1968, but ruled claimant had not borne the burden of showing the existence of an employer-employee relationship between Andrew and appellant, Central Pattern Company, and accordingly denied benefits. Claimant appealed to the full Commission which, dismissing the claim for want of jurisdiction, found "that the referee's statements of fact, findings of fact and preliminary conclusions of law are supported by competent and substantial evidence and the same are hereby adopted." Claimant sought judicial review in the circuit court of St. Louis County which reversed and remanded the cause. From that order the employer and insurer appeal contending that the circuit court had substituted its judgment as to questions of fact for that of the Commission and weighed the evidence rather than determining if there was "sufficient competent evidence in the record to warrant the making of the award," as required by § 287.490, RSMo 1969. We reverse.

Central Pattern Company located in Hazelwood, Missouri, manufactures patterns and castings. Its President, Ralph Petersen, and his wife own all outstanding shares of the company. On Sunday, March 3, 1968, Petersen, his sons, Andrew and Kurt, with family friends, (Mr. Trolmalen and his

---

1. Three claims had been filed. (1) February 10, 1969, a claim for compensation filed during the life of Andrew Petersen, signed by his attorney; (2) November 12, 1969, claim for "death award" by Ralph A. Petersen and Marie C. Petersen, parents of Andrew; and (3) on February 2, 1970, a claim for "temporary disability and medical" by Ralph A. Petersen as administrator of his son's estate, which is the subject of this appeal.

young son, David) left the Petersen home in St. Louis County and drove to the Rocklin farm. The farm, owned by Ralph and Marie Petersen, had recently been leased to Central Pattern and was used for family recreation and to entertain company customers. Petersen testified that on Saturdays and Sundays he and other family members would sometimes work at the farm, clearing the woods, stocking the lake or caring for the horses and because March 3, 1968; that it was a "nice day to work" so he decided to go to the farm and invited the Trolmalens.

Arriving at the farm they determined to clear certain fallen trees and the two men commenced working with a chain saw. Later, while Kurt Petersen (age 15) and young David Trolmalen were playing, Andrew (age 16) began driving a large tractor and shortly thereafter was found suffering from a profound head injury. No accident was observed, but it is assumed that while operating the tractor Andrew was somehow struck on the head. He was taken to an Illinois hospital, thence to St. Mary's Hospital in Clayton, Missouri, where surgery revealed a severe cephalhematoma and depressed skull fracture. Never regaining full consciousness, Andrew remained in St. Mary's for fifty-three weeks and on March 12, 1969, died from the injury.

In the subsequent Workman's Compensation action, the Referee found the requisite employer-employee relationship did not exist and accordingly denied the claim. The Commission found that Andrew's injuries occurred in Illinois but that claimant had failed to establish that Andrew's injuries were received under a contract of employment made in Missouri, ruling that in the absence of such showing it was without jurisdiction under § 287.110(2) and accordingly dismissed the claim. Pertinent portions of the Commission's Order follow:

> Although the referee did not make the ultimate conclusion and ruling required, we believe that his preliminary conclusion that the requisite relationship of employer-employee did not exist under the evidence presented in this case is correct.

There was evidence that young Petersen worked part time for his father at Central Pattern Company and that at times he had done work for his father's farm in Illinois for which he was paid by Central Pattern. There was however no satisfactory evidence that all work done by young Petersen on his father's farm in Illinois was done for and on behalf of Central Pattern pursuant to any Missouri contract of hire, either express or implied, oral or written. Instead, we find that if any employer-employee relationship existed between young Petersen and Central Pattern at the time and place of the fatal accident in Illinois, it arose in Illinois under an express or implied appointment there by the father on behalf of Central Pattern and the election by the son to enter into such employment undertook the performance of the specific task which later took his life.

The principal issue is whether there was sufficient competent evidence to warrant the Commission's conclusion that the employer-employee relationship (if any) arose in Illinois and not from a Missouri contract to hire.

█ It was the function of the court to examine this Order of the Industrial Commission and not the Referee's award, *Jackson v. McDonnell Aircraft Corporation*, 426 S.W.2d 669 (Mo.App.1968), but while so doing the circuit court failed to apply the proper standard of review. While the Commission's determination on questions of law is not binding on the court, *Weilert v. Fruin-Colnon*, 447 S.W.2d 781, 785[1] (Mo. App.1969); *Williams v. S. N. Long Warehouse Company*, 426 S.W.2d 725, 733[10] (Mo.App.1968), neither the circuit nor the appellate court may substitute its judgment on the evidence for that of the Commission. *Davies v. Carter Carburetor, Division ACF Industries, Incorporated*, 429 S.W.2d 738, 741[1, 2] (Mo.1968); *Saale v. Alton Brick Company*, 508 S.W.2d 243, 246[1] (Mo.App. 1974). Generally in passing on the sufficiency of the evidence we view the record in the light most favorable to the findings and disregard any evidence which might support a finding different than that of the

Commission, and this is true though a finding of the Commission to the contrary would also have been supported by the evidence. *McCue v. Studebaker Automotive Sales, Inc.*, 389 S.W.2d 408, 411[2] (Mo.App. 1965); *Williams v. S. N. Long Warehouse Company, supra.* If the award is supported by competent substantial evidence it must be affirmed unless contrary to the overwhelming weight of the evidence and we are only authorized to determine whether the Commission reasonably could have reached the result it did. *Miller v. Sleight & Hellmuth Ink Co.*, 436 S.W.2d 625, 627[5] (Mo.1969).

■ The circuit court ruled that the question of whether claimant was operating under a Missouri or an Illinois contract of employment at the time of his injury was a question of law, in this it erred because "the question of *where* the contract of employment or arrangement was made is one of fact," (emphasis supplied) *Hall v. Denver-Chicago International, Inc.*, 481 S.W.2d 622, 625[2] (Mo.App.1972), turning on the intentions of the parties as evidenced by their acts and conduct, the nature of the business, the situation of the parties and all the facts and circumstances. *Rendleman v. East Texas Motor Freight Lines*, 355 Mo. 287, 196 S.W.2d 171, 174[6] (1946). The burden of proving that fact is upon claimant, *Smith v. Braudis*, 234 Mo.App. 1237, 123 S.W.2d 223 (1939), who bears the burden of bringing himself under the provisions of the Workmen's Compensation Law at the time of the accident by showing a Missouri employment contract. *Hogue v. Wurdack*, 298 S.W.2d 492, 499[15, 16] (Mo. App.1957).

■ Respondent, citing *Herbert v. Sharp Brothers Contracting Company*, 467 S.W.2d 105 (Mo.App.1971) contends that the evidentiary facts are not in dispute, so the award that should have been entered by the Industrial Commission becomes a question of law and the Commission's conclusions do not bind the court on review. This contention is not well taken as there was sharp disagreement concerning the facts and the inferences to be drawn therefrom. In this connection it should be noted that the Commission is charged with the responsibility of passing upon the credibility of all witnesses and may disbelieve testimony of a witness though no contradictory or impeaching evidence appears. *Pate v. St. Louis Ind. Pack. Co., Div. of Swift & Co.*, 428 S.W.2d 744, 753[12, 13] (Mo.App.1968). It is apparent that the Commission's order finding claimant had failed in his proof, rested in part on the question of claimant's principal witness' credibility. Respondent argues, quite without merit, there is no credibility issue because of the "lack of any statement, finding or conclusion by the Referee or the Industrial Commission that respondent's testimony lacked credibility."

■ While normally the Commission should make specific findings of fact, *Enriquez v. Chemical Sealing Corporation*, 409 S.W.2d 686, 690[3–5] (Mo.1966), the basis of the Commission's decision is sufficiently clear to imply a finding of additional facts (beyond those expressly found) necessary to support it. *Miller v. Sleight & Hellmuth Ink Co.*, 436 S.W.2d 625, 627[2–4] (Mo.1969); *American Oil Company v. Pierce*, 472 S.W.2d 458, 461 (Mo.App.1971). Though findings of fact should show how the controlling issues have been decided, the Commission is not required to state all evidentiary facts upon which its ultimate findings may depend, *Groce v. Pyle*, 315 S.W.2d 482, 491[10] (Mo.App.1958), and here we note respondent requested no additional findings from the Referee or the Commission. It is our view that the findings made comply with the requirements of §§ 287.460 and 287.490, RSMo 1969.

Mindful of the standard of review discussed above, we now examine the evidence relative to the finding that no contract for employment was made in Missouri. It is undisputed that Andrew's injuries occurred in Illinois and that there was no written or express oral Missouri contract to hire for Andrew's alleged employment in Illinois. The only support for respondent's position must be found from evidence of an implied contract arising from the circumstances of the parties and the events surrounding the injury.

Petersen testified that March 3, 1968 was a nice day to work and added "Sundays we work the farm, Saturday and Sunday." No mention was made concerning the conversations as to the purpose of Andrew's going to the farm; for example, whether it would be for recreation, for work on behalf of the Petersens or work on behalf of Central Pattern Company. As Ralph Petersen described it; "I believe we all went to church. We got home. I would say about quarter of eleven, sat down, ate dinner, packed up, called Mr. Trolmalen and asked him if he would like to go with us. We went to the farm." They arrived about 2:00 in the afternoon, parked the car, went into the farmhouse, and since it was a nice day they decided to clear wood.

Two tractors were kept in a shed at the farm, one crawler type John Deere 1010, which according to Petersen was quite large and the other a small International Cub tractor used to cut grass. Petersen drove the John Deere to the wooded area where he and Trolmalen worked with the chain saw piling wood to burn, as Kurt and David Trolmalen played in a nearby creek.

Sometime later "Andy got up on the crawler tractor" and though he had driven it previously his father admitted "I can't tell you how much but he had driven it. It's a monstrous thing." At that juncture, there appears for the first time instructions concerning work for Andrew. Petersen testified; "I told him to go over with the crawler and take the heavy logs with the chain along to drag them." After receiving those instructions, Andrew apparently drove the tractor about fifty feet from where the men were working because the next thing Ralph Petersen noticed was the tractor "up against the tree, the bucket was imprinted in the tree, he was sitting on the tractor. I stopped the chain saw and I was wondering why he didn't come over or call me or something." On cross-examination Petersen was asked concerning the time and place of making the alleged employment contract:

"Q. Had you anything in mind—had you decided what it was you were going to do?

A. Mr. Mueller [respondent's counsel] —At what time?

Q. Mr. Weiland [appellant's counsel]— When you got there?

A. Yes, we decided to work in the woods.

Q. [Mr. Weiland] When did you decide that?

A. When we got there [the farm in Illinois] or before or—

Q. Was it a matter of making up your mind when you got there to do whatever came to your mind to do?

A. No, no. We, Mr. Trolmalen likes to work out in the woods; I like to work out in the woods; Andy liked to work out in the woods—it was a nice day. We decided to work out in the woods."

Though not conclusive, this equivocal testimony was pertinent to the Commission's conclusion that the decisions to employ Andy to work in the woods and to pay him for any work performed were indeed matters decided after the parties' arrival in Illinois, not prior to their departure from Missouri. Petersen later testified that if Andrew had not been injured he would have been paid for the work he performed by the Pattern Company, however, that statement was for the Commission to consider with all the evidence including that which tended to show the work at the farm was for the purpose of the lessor Petersen rather than the lessee Central Pattern Company.

Belying his present contention that Andrew was injured in the course of employment with Central Pattern, Petersen filed claims for certain other insurance benefits arising from his son's injuries, stating in writing that (1) Andrew's accident or sickness did not result from employment and (2) that he, Ralph Petersen, was the only member of the family employed by Central Pattern. These statements were made at a time when it was to Petersen's interest to assert the injuries did not result from employment and that Andrew was not an employee of the company. By way of explanation, he later testified that he had com-

**158**

pleted the forms in the manner described and made the statement because "my insurance agency . . . told me to sign it in this manner because it was not covered under the Workmen's Compensation Law because of my son." This explanation does little to enhance the Petersens' credibility who occupies conflicting roles on one hand as administrator and beneficiary of his son's estate making a claim under the Workmen's Compensation Act against an employer and on the other as President and owner (with his wife) of the alleged employer company.

Andrew had worked occasionally for Central Pattern Company since he was twelve years of age doing odd jobs on Saturdays and during school vacation at the company's shop at Hazelwood, Missouri. On a few occasions he had worked for Central at the Rocklin Farm. When he was injured, no one was hired to take his place. Monies paid to him were not shown on the company's books as salary, but instead were charged to miscellaneous expenses with nothing appearing anent social security, insurance coverage or as an employee for Workmen's Compensation purposes. While some high school students were employed part time at the Central Pattern Company, they, unlike Andrew, were paid with payroll checks. Finally, when an auditor from North American Insurance Company [insurer herein] inquired concerning part time employees for the period ending July, 1967 (which would have included any casual or part time employment Andrew had prior to that date) the auditor was told the company had no casual labor or part time employees.

We have concluded there is substantial competent evidence supporting the Commission's order. The judgment of the trial court is reversed.

McMILLIAN, P. J., and STEWART, J., concur.