**Robert C. ROBERTS, Appellant,**

v.

**SHARP BROTHERS CONSTRUCTION COMPANY, and The Travelers Insurance Company, Respondents.**

**No. WD 30693.**

Missouri Court of Appeals, Western District.

May 5, 1980.

**92** ▪ ▭▭▭▭▭▭▭▭▭▭▭▭▭▭▭▭▭▭▭

Robert C. Paden and Michael W. Manners, Independence, for appellant; Paden, Welch, Martin, Albano & Graeff, P. C., Independence, of counsel.

Gary E. Lowe, Kansas City, for respondents; Field, Gentry, Benjamin & Robertson, Kansas City, of counsel.

Before KENNEDY, P. J., and PRITCHARD and SWOFFORD, JJ.

PRITCHARD, Judge.

The issue in this worker's compensation case is whether there was competent and substantial evidence upon the whole record to sustain the Industrial Relations Commission award denying appellant's claim for compensation. The commission adopted wholly the findings of the administrative judge who ruled that appellant's injury did not arise out of his employment as a bricklayer.

Appellant's version of his alleged accident was that he had been assigned to repair the mortar in a brick patio at the Sanders' residence in the Lakewood subdivision of Lee's Summit, Missouri, on April 13, 1976. The mortar between the bricks had frozen, and appellant, using a rotohammer to dislodge the mortar, was down on his hands and knees working. As he got up, his foot slipped on the loose mortar which slipped underneath him and he went back down. He felt a pain in his back and could not get up. He crawled on his stomach 10 to 15 feet to a wrought iron rail and pulled himself up, then walked out and got into his truck where he sat for 15 or 20 minutes. His brother, Jess Roberts, also his supervisor, drove up and wondered why appellant was in his truck and appellant told him he had slipped and hurt his back and that he was going home and to a doctor. Jess said nothing and did not object to appellant's going home. On arriving home appellant took a hot bath and his wife drove him to see a chiropractor, Doctor Ray Boring, in Independence. Doctor Boring took x-rays of appellant's back and massaged it, but he got no relief. He saw him the next day, and two or three days later, he went back to work, and was put on light duty by Jess Roberts, which work he continued until about a week before his laminectomy operation, which was on June 21, 1976. Prior to that time, appellant's left leg became paralyzed, and he went to see Doctor Drisko, an orthopedist, who admitted him to St. Mary's Hospital. He was unable to return to work after release from the hospital until December 1, 1976. Doctor Nathan Schecter gave his report that appellant had 35% permanent partial disability of the body as a whole. A report of Doctor Harry Overesch showed a 25% permanent partial disability.

Other than his supervisor, appellant told no one about the accident of April 13, 1976, until late June or early July, 1976. Although Doctor Boring's records reflected that appellant's condition was related to his employment, the doctor testified from his recollection that appellant did not tell him he had fallen or slipped on mortar, or having done the splits. On cross-examination, the doctor acknowledged that since April 13, 1976, he saw 60 to 70 patients per day, and he saw and treated appellant more than a year before this hearing.

Respondents produced Miss Susan Berkest who testified that she was the insurance clerk for Doctor Drisko's office, had been so employed since. She brought with her under subpoena, office records relating to appellant. Exhibits 6 and 7 are standard Health Insurance Claim forms which were prepared by her and signed by appellant in her presence. These documents note that the patient's sickness or injury did not arise out of his employment. Exhibit 8 was testified by Miss Berkest to be a patient information sheet which is always filled out by the patient unless he is unable to write. To the best of her knowledge, the lower half of the exhibit was filled out by appellant, and she could see no difference in the handwriting on it. The upper portion of Exhibit 8 notes: "Compensation Case? <u>No</u> Accident? <u>No.</u>" This same document was identified by appellant as Exhibit 1, but he testified he did not himself fill out all of it.

Exhibit 4 is a record of appellant's hospitalization admitted without objection. Therein, his history and physical notes recite in part: "This patient has had a little trouble with his back and left hip since October 1975. He did a lot of hunting and walking in November 1975 and in his estimation he improved. He however returns in March and has had difficulty since then and has been unable to work at his regular job as a brick layer. * * *."

Jess Roberts, who was appellant's overseer on April 13, 1976, testified that appellant told him on that date that he had hurt his back, but did not tell him how. He did not recall whether appellant then told him what happened at the Sanders' residence.

The administrative law judge found that appellant testified to facts at the time of trial which would constitute an accident within the meaning of the law. "However, contradictory but competent evidence adduced during the trial of this cause substantially refutes the employee's version. Specifically, histories given to a treating chiropractor, a treating orthopedic surgeon, and a hospital provide for a different cause of his complaints. The history given the operating surgeon relates to the employee's complaints to a point in time prior to the date claimed to be that of his accident. Taking this evidence into account, along with my observation of his demeanor at and throughout the trial; his apparent selective memory; and all the other competent and substantial evidence, I find and accordingly believe that the employee did not sustain an accident arising out of and in the course of his employment, as alleged. Compensation must, and therefore is, herewith denied."

Appellant's Point I.A. is divided into three subpoints attacking the administrative law judge's finding of substantial and competent evidence. The first relates to the history given to Dr. Drisko, Exhibits 6, 7 and 8. Contrary to appellant's contention, these documents were properly authenticated and identified by insurance clerk Berkest for Dr. Drisko's office. Two of the documents were filled out by her, and it could be concluded that the third was filled out by appellant himself. These documents indicate that the patient's complaint was not from an accident, nor under worker's compensation. They were admissible under the Business Records Act, § 490.680, RSMo 1969 [see *Tryon v. Casey*, 416 S.W.2d 252 (Mo.App.1967)], and their contents do tend to refute appellant's claim of accident arising out of the course of his employment.

Appellant next says that the testimony of the treating chiropractor was so inherently incredible that it does not constitute substantial evidence. He argues this position from the fact that Doctor Boring saw 60 to 70 patients per day about April 13, 1976, and did so thereafter, totalling 17,100 visits with them to the date of trial, causes him to be unable to recollect what appellant did not say, i. e., that he did not tell him there had been an accident, and that his testimony is farfetched. It is, of course, not impossible for Doctor Boring to remember that appellant told him nothing about an accident, but in any event, the weight and value of that evidence was for the Commission, *Petersen v. Central Pattern Company*, 562 S.W.2d 153, 156[6] (Mo.App.1978), upon which this court may not substitute its judgment, *Davies v. Carter Carburetor, Di-*

*vision ACF Industries, Inc.,* 429 S.W.2d 738, 741 (Mo.1968).

Lastly, appellant says the hospital records are ambiguous and do not contradict his testimony. Obviously, this contention is without merit, for not only do those records not refer to an accident, but they fix the time of complaints prior to the date appellant claimed he was accidentally injured, as the administrative judge found.

The recitation of the facts above clearly shows that the finding of the administrative law judge (adopted by the Commission) is not against the overwhelming weight of the evidence, but contrarily is supported by competent and substantial evidence, and therefore must be affirmed as being a reasonable result. *Miller v. Sleight & Hellmuth Ink Co.,* 436 S.W.2d 625 (Mo.1969).

The judgment is affirmed.

All concur.