**Anthony W. BEYER, Appellant,**

v.

**HOWARD CONSTRUCTION COMPANY and Aetna Casualty and Surety Company, Respondents.**

**No. 15181.**

Missouri Court of Appeals, Southern District, Division One.

Sept. 9, 1987.

Jack Hoke, Hoke & Miller, Springfield, for appellant.

William D. Powell, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, for respondents.

CROW, Chief Judge.

Anthony W. Beyer ("claimant"), pursuant to § 287.495, RSMo 1986, appeals from a final award of the Labor and Industrial Relations Commission ("the Commission"), § 287.480, RSMo 1986, affirming an award by an administrative law judge ("the judge") of the Division of Workers' Compensation, § 287.460, RSMo 1978. The award ordered Howard Construction Company ("Howard") and Aetna Casualty and Surety Company ("Aetna"), hereafter referred to collectively as "respondents," to pay $587 in medical expenses incurred by claimant, but denied claimant any other benefits under The Workers' Compensation Law, chapter 287, RSMo 1978, as amended.

Claimant had sought compensation for an alleged accident, § 287.020.2, RSMo Cum.Supp.1984, which, according to him, occurred about 10:00 a.m., Saturday, June 29, 1985, while he was employed by Howard operating a jackhammer. The judge, after an evidentiary hearing, entered findings of fact and rulings of law, including this:

"Although [claimant] testified to the essential elements of an accident (job-related), it is my opinion that the incident in question did not occur as [claimant] testified and accordingly, this issue is found against [claimant]."

The Commission unanimously found that the judge's award was supported by competent and substantial evidence upon the whole record.

Claimant briefs one assignment of error, which avers:

"The ... Commission erred in awarding [claimant] limited medical aid while denying [him] complete reimbursement for medical aid and in denying [him] temporary total disability payments because all of the competent and credible evidence established [his] claim that he was injured on the job and therefore entitled to benefits ... in that all of the competent evidence established (1) that [claimant's] injuries were caused by and in the course of his employment with [Howard] and (2) that [Howard] had notice claimant was in need of treatment and [Howard] refused or neglected to provide needed medical treatment and therefore the Commission's award is clearly contrary to the overwhelming weight of all of the evidence in the whole record in that the evidence establishes that [claimant] suffered accidental injury arising out of and in the course of his employment with [Howard]."

While we have carefully studied the entire record on appeal, it is unnecessary, in this opinion, to set forth all of the evidence presented to the judge. Consequently, we shall summarize only such evidence as is required to address the above point.

Claimant testified that the jackhammer unexpectedly "jerked forward," pulling him into "a totally bent-over position." At the time of the alleged mishap, claimant was working with one Scott Harris, who claimant said was no farther than ten feet away. Claimant recounted that he put his hands at the base of his back, telling Harris: "My back hurts. It's killing me." Harris, according to claimant, thereupon took over operation of the jackhammer, and ran it until quitting time, 1:30 p.m.

Claimant testified that before departing the job site, he tried to tell the "boss," one Ike Athey, about the injury, but Athey was "on the dozer" and the message "didn't get across."

Claimant reported for work Monday morning, July 1, and, so he said, told Athey his back was "still sore from running the jackhammer Saturday."

Athey testified claimant made no complaint of backaches or any jackhammer-related accident, either on June 29 or July 1. Around 10:30 a.m., July 1, Athey terminated claimant's employment because, according to Athey, claimant's work was unsatisfactory. Athey explained, "[Claimant] stood for an hour and a half watching the loader down in the creek, and that's when I terminated [him]."

Later that day, claimant contacted an official of the Division of Workers' Compensation, and the next day (July 2) claimant went to Howard's office and filed a written report of the alleged injury with one Kenny Woods, a "supervisor." Woods and Athey directed claimant to seek medical attention at the hospital in Mansfield, the medical facility nearest the job site. Claimant went there and was seen by a physician, who took X-rays, made an examination, and prescribed medication.

Claimant's next visit to a physician was on August 5, 1985, when, at the instance of his lawyer, he saw Dr. Lin in Springfield. Lin examined claimant, concluding that "most likely he has acute lumbosacral strain." Claimant, at Lin's suggestion, entered a hospital the next day, where he remained until August 12, 1985. On the latter date, pursuant to arrangements by Aetna,[1] claimant was examined by Dr. Sundstrom, who made a diagnosis of "[p]ossible low back strain." At Sundstrom's suggestion, claimant entered an-

---

1. It was admitted at the evidentiary hearing that Howard's liability under The Workers' Compensation Law was "fully insured" by Aetna.

other hospital the following day, where he remained until August 17, 1985. Upon discharge, Sundstrom's final diagnosis was "[a]cute low back strain."

Scott Harris, claimant's co-worker at the time of the alleged injury, testified he (Harris) did not recall seeing claimant "hurt himself" on June 29, 1985, and that claimant "never mentioned anything" about any injury. Harris explained, "[A]ll he said is that his back was sore." Harris added that he and claimant were "[t]rading off on the jackhammer" throughout the day until they were told to go home.

Ralph Edward Taylor, a Howard employee on June 29, 1985, testified that after lunch that date, claimant "was saying something about his back it was hurting him or bothering him," and that "it had something to do with the jackhammer." Taylor disclosed he was "fired" by Howard August 16, 1985, and "[t]hey have got charges against me."

Russell James Wyrick and Dennis Dale McKenzie, laborers employed by Howard at the time of claimant's alleged injury, each testified that claimant never made any complaint to them about backaches or any jackhammer-related accident.

Denny Kern Campbell, also a Howard employee at the time of claimant's alleged injury, recalled talking with claimant the morning of July 1, 1985. Campbell testified:

"Q ... Did [claimant] speak at any time concerning work he had done around a chicken house of his?

A He mentioned to me he'd worked in a chicken house over the weekend.

Q And did he mention about any aches or pains that he had had associated with working at the chicken house?

A He said he kind of hurt himself in his chicken house working over the weekend.

. . . .

Q Okay. Prior to the last day of his employment did [claimant] make any complaints about his back in your presence?

A No."

In the argument portion of his brief, claimant proclaims, "All of the credible evidence produced at trial established that [claimant] did sustain an injury on the job ... while employed by ... Howard...." Claimant bases his argument on the following excerpts from the findings of the judge, which, as we have seen, were embraced by the Commission:

"... if the injury were as serious as the employee claims, then it is my opinion that he should have and would have notified the employer that he in fact injured himself prior to the actual date of notice which was July 2nd, 1985.

During the remainder of the day in question and on July 1st, 1985, until such time as the employee was fired, he did not notify the employer that he in fact had sustained an injury. It was only *after* he was fired, that he notified the employer of the alleged injury.

Another reason for the denial is that based on the employee's testimony, the entire jackhammer episode appears to be very violent and would have caused a big enough disturbance that the co-employee (Scott Harris) working with Mr. Beyer would have noticed Mr. Beyer being thrown forward or down or in whatever manner the employee testified to but, to the contrary, while working in close proximity, Mr. Harris did not notice anything out of the ordinary. Based on my observations and in considering this testimony, it is my opinion that the occurrence did not occur as testified to by the employee."

Claimant argues that the above findings demonstrate that the Commission's decision was "not based upon fact, not based upon evidence, not based upon any medical record or other document, but based merely upon ... speculation and opinion." Claimant adds, "Very simply put, there is absolutely no evidence or facts upon which to base a decision that [claimant] did not injure his back in the manner as testified to."

We remind claimant that in a claim for compensation under The Workers' Compensation Law, the burden is on the employee

to prove all material elements of his claim. *Meilves v. Morris,* 422 S.W.2d 335, 339[5] (Mo.1968); *Merriman v. Ben Gutman Truck Service, Inc.,* 392 S.W.2d 292, 296[5] (Mo.1965). The Commission is charged with the responsibility of passing upon the credibility of all witnesses, and it may disbelieve testimony of a witness though no contradictory or impeaching evidence is introduced. *Hawkins v. Emerson Electric Co.,* 676 S.W.2d 872, 877[2] (Mo.App.1984); *Blissenbach v. General Motors Assembly Division,* 650 S.W.2d 8, 11[5] (Mo.App. 1983). The Commission is not obliged to accept the testimony of the employee as true. *Raef v. Stock-Hartis, Inc.,* 416 S.W.2d 201, 205 (Mo.App.1967); *Foster v. Carter Carburetor Corp.,* 264 S.W.2d 904, 909[2] (Mo.App.1954).

Inasmuch as the dispute herein is based on a claim arising after August 13, 1980, our review is governed by § 287.495.1, RSMo 1986, which provides, in pertinent part:

"Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award."

■ Mindful of those precepts, we note that, contrary to claimant's argument, there was substantial evidence that he was not injured in the manner he described. Accepting as true the testimony of Athey, Harris, Wyrick, McKenzie and Campbell— which the Commission had the right to do—the first complaint registered by claimant regarding his alleged injury was July 2, 1985, the day after he was fired. The fact that claimant did not complain of injury on June 29 or July 1, combined with Harris' testimony that on June 29, he saw no incident like the one described by claimant, is more than sufficient to support a finding that claimant was not injured in the manner he alleged. The fact that Dr. Lin and Dr. Sundstrom diagnosed claimant as suffering from back strain did not compel the judge or the Commission to find that such condition resulted from the incident recounted by claimant. Indeed, Campbell's testimony supplied an independent origin for claimant's affliction—claimant's statement that he hurt himself working in his chicken house during the weekend. Claimant's contention that there was no competent evidence to support a finding by the Commission that he did not injure his back in the way he described is without merit.

■ Furthermore, even without the testimony of Athey, Harris, Wyrick, McKenzie and Campbell, we could not disturb the Commission's decision, as the Commission can reject a claim solely upon its disbelief of witness testimony, even if it is uncontradicted or unimpeached. *Ricks v. H.K. Porter, Inc.,* 439 S.W.2d 164, 167[5] (Mo. 1969); *Cox v. General Motors Corp.,* 691 S.W.2d 294, 296[1] (Mo.App.1985).

■ As a "second basis" for his premise that the decision of the Commission is not supported by sufficient competent evidence, claimant points to the allowance of $587 in "partial reimbursement of medical aid." Claimant insists he should have been awarded "all of his reasonable medical expenses," inasmuch as Doctors Lin and Sundstrom both concluded that hospitalization was necessary for treatment of claimant's condition.

In allowing claimant $587, the judge found:

"The employer and insurer are responsible for the expenses incurred by the employee as a result of their insistence that he secure treatment as provided by Dr. Sundstrom. Dr. Sundstrom's records indicate that these charges are $587.00 and since these expenses were incurred at the insurer's insistence, if they had reason to doubt the reasonableness and necessity of these charges, it

would be their responsibility to introduce evidence that they in fact were unreasonable and unnecessary. Accordingly, they are ordered to pay the expenses as above-stated."

Respondents did not make application for review to the Commission, and in respondents' answer to claimant's application for review, respondents prayed the Commission "to sustain and uphold" the judge's award. Consequently, we need not decide whether the judge, having found that claimant was not injured as he alleged, was nonetheless correct in ordering respondents to pay Dr. Sundstrom's charges.

We have already concluded that the Commission's finding that claimant suffered no injury compensable under The Workers' Compensation Law must be upheld. That being so, the Commission did not err in denying claimant reimbursement for his medical expenses, as an employee who has sustained no compensable injury is not entitled to medical or hospital treatment for possible disability resulting from some other accident or cause. *Cox*, 691 S.W.2d at 297[3].

The final award of the Commission is affirmed.

GREENE, P.J., and HOLSTEIN, J., concur.