Sherry J. BROWN, Employee–Appellant,

v.

HILLHAVEN CONVALESCENT CENTER, Employer–Respondent,

and

Ranger Insurance Co.,
Insurer–Respondent.

No. 16235.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 29, 1989.

Winston V. Buford, Eminence and Milton B. Garber, Fulton, for employee-appellant.

John G. Newberry, Schroff, Glass & Newberry, P.C., Springfield, for employer-respondent.

FLANIGAN, Presiding Judge.

On October 9, 1985, claimant Sherry J. Brown filed a claim for compensation under the Missouri Worker's Compensation Law against her employer, Hillhaven Convalescent Center. The date of the accident was stated as follows: "Early May 1984, after midnight." The part of the body injured was "low back." The accident was described as follows: "Lifting large oxygen tank. This was the first time I had ever attempted to lift these big oxygen tanks." The employer's answer generally denied the allegations of the claim.

An evidentiary hearing was held before Chief Administrative Judge James H. Wesley, who found in favor of the employer and its insurer and against the claimant and awarded no compensation. The claimant filed an application for review and the Labor and Industrial Relations Commission affirmed and adopted the award entered by Judge Wesley. Claimant appeals.

Claimant's first point is that the Commission erred in finding that the tank incident "did not cause or aggravate claimant's condition" because that finding is not supported by substantial evidence and is clearly contrary to the overwhelming weight of the evidence. This contention requires review of the evidence in light of the following familiar principles.

On this appeal this court must determine if the award of the Commission is supported by competent and substantial evidence on the whole record. All of the evidence and legitimate inferences therefrom must be viewed in the light most favorable to the award. This court may not substitute its judgment for that of the Commission. The award may be set aside only if there is no substantial and compe-

tent evidence to support it or if the findings of the Commission are clearly contrary to the overwhelming weight of the evidence. Conflicts in the evidence are for resolution by the Commission. *Blatter v. Mo. Dept. of Social Services,* 655 S.W.2d 819, 821[1–3] (Mo.App.1983). This court must disregard any evidence which might support a finding different from that of the Commission, and that is true although a finding of the Commission to the contrary would have been supported by the evidence. *Petersen v. Central Pattern Co.,* 562 S.W.2d 153, 155–156 (Mo.App.1978). The Commission is charged with the responsibility of passing upon the credibility of all the witnesses and may disbelieve testimony of a witness even if no contradictory or impeaching evidence appears. *Id.*

█ "The claimant has the burden of proof to establish that she sustained an injury by accident arising out of and in the course of her employment, and that the accident resulted in the alleged injuries." *Barnes v. Ford Motor Co.,* 708 S.W.2d 198, 199[1] (Mo.App.1986).

Claimant, who was 46 at the time of the evidentiary hearing in 1987, has a complicated medical history. In June 1978, over five years before she was employed by Hillhaven, she had a low back problem diagnosed as a ruptured lumbar disc—L4–right. She underwent an operation described as "subtotal hemilaminectomy, L4 and L5–right with disectomy L4." Following that operation, performed by Dr. McAlhaney, her "main doctor" was Dr. Trotter who, according to claimant, "has been taking care of my heart for years."

Referring to the 1978 operation, the claimant, on direct examination by her counsel, gave the following testimony:

"Q. Were you ever in real pain after your back operation?

A. Yes, sir most of the time I was.

Q. Tell the Judge what aggravated or bring on pain.

A. Would be the—according to the way I lifted, the way I stood, how much I stood or something like that.

Q. What would you do to relieve the pain?

A. I would usually take medication for it."

Claimant's employment with Hillhaven commenced in September 1983 and her last day of work there was May 22, 1984. She was a nurse's aide. Claimant testified that "a short time" before she went to work for Hillhaven she applied to the State of Missouri for unemployment benefits "because I had my heart condition and still had back complaints. I knew that was wrong to draw unemployment even after I went to work for Hillhaven." She testified that "after I moved to Shannon County [an undisclosed time after her employment at Hillhaven ended], I talked to a lawyer about getting social security and I didn't even mention worker's comp. I am now receiving permanent total social security benefits."

Claimant testified that in April 1981 she was hospitalized for low back pain, that Dr. Trotter treated her over the years for low back pain and gave her percodan, "a very strong drug," for her back pain. She said her back pain was so bad that on May 4, 1984, "several weeks before I got hurt," she saw Dr. Trotter and asked him to prescribe percodan because she needed something "to help me with my back because I was working and my back hurt pretty bad." She testified that on May 25, 1984, she saw Dr. Heintz and told him that she had been having back pain for several days and "that was happening at the same time as my divorce from my husband and my emotional upset." She admitted that she might have told Dr. Heintz that her back pain was connected to her marriage and her marriage difficulties. "A lot of it was stress." She said that during this time her husband abused her several times and kicked her several times.

According to the claim, the accident took place in early May 1984 "after midnight." On deposition the claimant testified that the incident took place on May 2, 1984. At the evidentiary hearing she testified that the incident took place on May 22, 1984.

Claimant was admitted to St. John's Regional Health Center in Springfield on May

27, 1984, and remained there until June 14 under the care of Dr. Tsang, who did not testify. On admission she told one doctor that her back pain started "one week ago." She told another doctor on the same day that the back pain started "two weeks ago" and that she last worked at Hillhaven "five days ago."

Claimant testified that, prior to the alleged accident, "I knew I had the bad back and I just favored it." According to claimant, she and a co-worker, whose name she could not recall, close to the time claimant was scheduled to get off work at 7 a.m., went down to the storeroom to get a full bottle of oxygen. Claimant testified that on prior occasions she would use a dolly to move an oxygen tank, but on this occasion she did not do so because she was in a hurry.

Claimant testified, "We had to go outside ... to get the tank and I just—I tried to manhandle it is what I tried to do. I twisted—I started to reach for it and throw it on like that and when I did I don't know whether I slipped, I don't know whether I went all the way to the floor...."

Claimant testified that at the time of the incident she was not sure whether she cried out or "made any oral or evidence of pain." She said that she and the co-worker went back upstairs and "the RN hooked the tank up and I drove myself home." She said, "I always kept pain pills at home because when my back got to hurting I couldn't sleep and they put me to sleep.... When I would see Dr. Trotter for my heart he gave me pain pills for my back. I complained to him from time to time about my back because I kept them around all the time."

Claimant called as her witnesses several employees of Hillhaven, including Don Long, Johanna Clark, Karen Gammill, Lavera Harlan and Nancy Steiner.

Don Long, the administrator at Hillhaven, identified claimant's Exhibit C, which was admitted into evidence. Exhibit C was a memorandum made by Johanna Clark, a registered nurse, based on a conversation she had with claimant on May 26, 1984. Exhibit C reads:

"June 27, 1984—I called Sherry Brown on Saturday, May 26, 1984, to ask her if she would work 11 to 7 that night. She told me that she was laid up and that she had the kids there waiting on her. She said that she didn't feel she could come in but that she would be there Sunday night. When I asked her what was wrong she said that she really didn't know, that she had done something to her back, adding that she wasn't sure how or when but thought it might have been when she moved an oxygen tank the other night. Signed: Joan Clark, R.N."

Long also testified that the procedure at Hillhaven was to make a written report of any incident, no matter how small, and that all employees are indoctrinated to file an incident report. He said there were special forms for such reports and Hillhaven records contained no such report concerning the alleged accident.

Johanna Clark testified that during her conversation with claimant on May 26, 1984, claimant said, "I hurt my back." The witness asked the claimant how she did it and claimant replied, "Well, I really don't know how, when or where it happened. I don't know if it happened when I moved an oxygen tank the other night or how it happened." Clark said: "She mentioned that she had slipped off a curb getting into the car and she didn't know whether it was then or not but that she was laid up and she just could not come to work." Clark also said that "if an incident is reported to me, a definite incident, and the employee is not there, I would initiate an incident report and turn them in to our personnel director."

Clark testified that the workers on the shift with claimant on May 22, 1984, included Lavera Harlan and Karen Gammill. She said that Nancy Steiner did not work on May 22, 1984.

Karen Gammill, a licensed practical nurse under whom claimant worked, testified, on direct examination by claimant's counsel:

"Q. And were you with her during the time she got hurt trying to load a bottle?

A. No, sir. I don't remember ever having Sherry change an $O_2$ bottle."

Gammill also testified: "As far as I could remember she has never handled an $O_2$ tank under me."

Lavera Harlan, RN, testified that she was the assistant night supervisor on May 22, 1984. She testified: "If [claimant] hurt herself in late May I do not know it. I don't recall [claimant] making any statement to me that she had hurt herself moving an oxygen bottle. If anyone told me they hurt their back moving an oxygen tank I would have remembered it because we don't have that many incidents of help being hurt."

Nancy Steiner testified that she did not recall any conversation she had with claimant concerning the tank incident. Claimant had previously testified that Steiner was the registered nurse on duty at the time of the incident. Steiner did not work on May 22.

In the spring of 1985 claimant was hospitalized at Mountain View and later at a hospital in Mt. Vernon for her heart condition. In June 1986, claimant underwent back surgery performed in Columbia by Dr. Garth Russell, who did not testify.

Although some hospital records were introduced by the employer, claimant did not introduce any hospital records nor the testimony of any physician except Dr. Vanderbroek, who saw claimant only once and that was in May 1987. Dr. Vanderbroek testified that he was an internist with no training in orthopedics. He did not x-ray the claimant nor did he look at her x-rays. He did not know "what back surgery she actually underwent.... I had no records of that." He also testified that claimant did not tell him that she had any back problems before the oxygen tank incident and that she had told him that she was fine from her prior surgeries. He assumed that at the time of the tank incident she was free of complaints in the back.

Kimberly Walker, a defense witness, testified that she took claimant to the hospital on May 27, 1984. Walker testified that claimant told Walker "that she had hurt her back that morning. ... I am referring to the morning I picked her up."

In its findings of fact and rulings of law, the Commission stated that although there was evidence that the claimant's "credibility was lacking," it found that "some type of incident, as described by the claimant as the oxygen tank incident, did occur." The Commission further found, however, that "the incident in question is de minimis." The commission found: "Since this [oxygen tank] incident did not cause or aggravate claimant's condition, claimant's injury did not arise out of the employment nor did it arise in the course of her employment."

There was testimony that following the 1978 operation claimant continued to have back trouble requiring use of percodan and medical attention from Dr. Trotter on May 4, 1984. The Commission could have drawn the inference that some of her back complaints on May 25, 1984, were due to marriage difficulties and abuse by her husband. Claimant gave conflicting testimony concerning the date of the accident. Her co-workers at the time of the alleged incident were unaware of its happening. After the incident claimant told Johanna Clark that she didn't know how or when she had done something to her back and that she didn't know whether it happened when she slipped off a curb getting into the car. The claimant told Kimberly Walker that she had injured her back on May 27, 1984, five days after her last day of work at Hillhaven.

This court holds that the findings of the Commission are not clearly contrary to the overwhelming weight of the evidence and, indeed, are supported by substantial and competent evidence. Claimant's first point has no merit.

■ Claimant's second point is that the Commission erred in finding that the record is silent in regard to the issue of separating "nonrelated disabilities," (claimant's pre-existing disabilities and her "disability from nonrelated problems") from what claimant alleged to be the "related

disability," (the disability attributable to the oxygen tank incident). Since the Commission found, as discussed under claimant's first point, that the tank incident did not occasion any disability, a discussion of claimant's second point would be academic. The fact is, however, that claimant's evidence was subject to the deficiency pointed out by the Commission and justified the finding claimant now attacks.

■ Claimant's third point is that the Commission erred in denying claimant compensation for medical care.

"A claimant is not entitled to medical compensation where he has suffered no disability as a result of an accident upon which his claim is premised." *Cox v. General Motors Corp.,* 691 S.W.2d 294, 297[3] (Mo.App.1985). To similar effect see *Beyer v. Howard Const. Co.,* 736 S.W.2d 78, 82 (Mo.App.1987); *Birschkus v. Krey Packing Company,* 464 S.W.2d 545, 546[1] (Mo.App. 1971); *Dixon v. Art Bunker Motors, Inc.,* 387 S.W.2d 199, 205[8] (Mo.App.1964). Claimant's third point has no merit.

The final award denying compensation is affirmed.

HOGAN and MAUS, JJ., concur.