**Burnedine HAYES, Claimant,**

v.

**GENERAL MOTORS, Employer.**

**No. 59011.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 18, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 8, 1991.

Application to Transfer Denied
Sept. 10, 1991.

Sheldon Weinstein, St. Louis, for Claimant.

Brian J. Dean, St. Louis, for Employer.

PUDLOWSKI, Presiding Judge.

This is an appeal from a Labor and Industrial Relations Commission's decision. Appellant, Burnedine Hayes, (hereinafter Hayes), a former employee of General Motors Assembly Division (hereinafter General Motors) in Wentzville, Missouri, claims that she suffered an occupational disease or accident through an injury to her right wrist in May 1985 due to the use of an air gun on the assembly line at respondent, General Motors. Hayes began her employment at General Motors on May 20, 1985. She claimed that she experienced an injury to her wrist on or about May 25, 1985. She was required to use an air gun at an upward angle which required seventy-five to eighty repetitions per hour. On the second day in June 1985 as the pain progressed, Hayes sought treatment from Dr. Del, the plant physician. The claimant asserted that after being treated by Dr. Del with pain pills, ice packs, and heat treatments, he informed her he would be unable to continue her treatment as it was a personal injury unrelated to work.

After being denied treatment through General Motors, Hayes sought independent medical treatment. Subsequently she saw twenty-eight doctors in association with her wrist injury, neck and upper arm pain, and tension headaches. Hayes continued to work until January 1987 when General Motors laid her off. Hayes has not worked since that time.

Hayes filed a claim for compensation claiming that while in the course and scope of her employment, and through repeatedly putting on transmission cable she incurred an occupational disease. In the findings of fact and conclusions of law the administrative law judge (hereinafter ALJ) found that Hayes "sustained some sort of sprain or strain to her right wrist which ... resulted in permanent partial disability of 10% of the right hand at the wrist," and awarded her a total payment of $2,505.83. He also found that not all the problems claimed by Hayes were related to her work injury, and, accordingly, denied the medical expenses incurred by Hayes. The Labor and Industrial Relations Commission upheld this award and Hayes filed this appeal.

The question presented on appeal is whether the finding that Hayes sustained a 10% permanent partial disability of the right hand by the ALJ and subsequently upheld by the Labor and Industrial Relations Commission is supported by the weight of the evidence. It is the position of Hayes that the award is insufficient and is not supported by the facts found by the commission.

Our review is limited to questions of law. § 287.495 RSMo 1986. We must affirm the commission's decision if, after a review of the entire record in the light most favorable to the finding, we believe the award is supported by competent and substantial evidence. *Saidawi v. Giovanni's Little Place*, 805 S.W.2d 180 (Mo.App. 1990); *French v. Ford Motor Co.*, 720 S.W.2d 24, 26 (Mo.App.1986). In making this determination, evidence which might support findings different from those found by the commission must be disregarded. *Saidawi, supra*, 805 S.W.2d at 183; *Nelson v. Consolidated Housing Development and Management Co., Inc.*, 750 S.W.2d 144, 148 (Mo.App.1988).

It is well settled that questions of fact are for the commission. This court may not substitute our judgment on evidence for that of the commission's, even if the evidence could support a contrary finding. *Matthews v. Roadway Express,* 660 S.W.2d 768, 769 (Mo.App.1983). The weight to be given evidence rests with the commission and it alone determines the credibility of witnesses. *Katzenberger,* 690 S.W.2d 473, 475 (Mo.App.1985). Where competent evidence is conflicting, resolution is for the commission and its choice is binding upon this court. *Brown v. Hillman Convalescent Center,* 776 S.W.2d 47, 49 (Mo.App. 1989).

General Motors offered in evidence the deposition of Dr. Ralph Graff (hereinafter Graff). He testified that he was a general surgeon and had examined Hayes on May 5, 1987. He further testified to the medical history of Hayes. This medical history revealed that on May 20, 1985, Hayes started working at General Motors. Her job required repetitive and twisting motions of her right wrist. Hayes soon developed pain in her wrist which was progressive. Hayes did not seek medical treatment immediately but because of her progressive symptoms she was seen by the company doctor. No treatment was administered by Dr. Del. On December 3, 1985, Hayes was seen at the County Hospital. Hayes showed Graff reports from her visit to County Hospital in which no abnormal findings were described. Her medical history revealed that she was subsequently seen by a chiropractor who referred her to a Dr. Paul Weks, (hereinafter Weks), who also evaluated her wrist. Weks's physical examination of claimant, the x-ray examination and orthoscopic examination of the wrist were also non-revealing. Hayes was subsequently seen by Dr. Hubert Gaskin, an internist, who initiated an extensive work-up, which included referrals to multiple doctors. During these examinations Hayes complained of pain in her head, her legs, and her entire right upper extremity. A diagnosis of thoracic outlet syndrome was entertained, but two doctors who examined her concluded that she did not have thoracic outlet syndrome. Hayes brought with her multiple medical records. Graff scanned these records and found the only abnormal test to be an abnormal sedimentation rate. Graff explained that a sedimentation rate is a test where anticoagulated blood is allowed to settle, and the cells will settle to the bottom. The test measures the rate the blood settles. Graff testified that the test is very non-specific. He stated that it indicates that there is an abnormal sedimentation rate which indicates a disease process, but that the test is very ineffective in indicating what the disease process is. Graff further testified that all of Hayes's other examinations, a CT scan and such, were within normal limits. The medical report showed a nerve condition study and an EMG carried out at Jewish Hospital on December 26, 1986, and was also negative. At this time Hayes complained of pain and an inability to properly raise her right extremity and has been unable to work since being laid off at General Motors.

Dr. Graff also conducted a physical examination of Hayes. Graff found the examination of her head was not remarkable, that is, there were no bumps, lumps, or abnormalities of her head. Examination of neck revealed a normal range of motion. He found that Hayes exhibited normal flexion, extension, lateral bending, and lateral rotation.

Dr. Graff's examination of Hayes's shoulders revealed a normal range of motion. He found the forward elevation, backward elevation, abduction, adduction, internal rotation, and external rotation of both shoulders to be normal. He found that these motions were carried out slowly and cautiously at the right shoulder but that the magnitude of the motions were normal. Dr. Graff could not detect any areas of tenderness in her upper right extremity.

Dr. Graff found the motion was normal at the elbows, the wrists, the joints of the fingers, thumbs, and both hands. The deep tendon reflexes were normal at both elbows and wrists. However, Dr. Graff did find that Hayes was experiencing a "glove type decreased sensation" involving the en-

tire right hand, which he explained was that from the wrist down there was numbness. He testified that this numbness did not follow the course of any particular nerve or nerve root. He found no evidence of atrophy. Circumferential measurements of the arms and the forearms were bilaterally equal. He found good radial pulses bilaterally, which persisted when Hayes raised her arms around the head. Graff explained that if there was something anatomical at the shoulders that would block off the artery when the arms were elevated one could feel the change in pulse in a movement of this sort. He testified that there was no evidence that the arteries were blocked off when the arms were elevated.

Dr. Graff further testified that he could not arrive at a diagnosis of a physical finding that would account for Hayes's symptoms. Graff testified that based on the lack of a physical cause for her disability, he suspected that Hayes might have psychological problems and thereby she would suffer psychosomatic problems. However, Graff stated that "I think the statement that I would have confidence in making [is] that I cannot make a diagnosis based on my physical findings." It was his opinion that Hayes had not suffered a permanent partial disability as a result of her employment at General Motors.

Hayes offered in evidence the deposition of Dr. Grant Izmiritian, (hereinafter Izmiritian). He testified that the general nature of his practice was family medicine, occupational medicine and geriatric medicine and that he examined Hayes on August 20, 1986. In this examination Hayes complained of pains in the wrist after repeated motion of the right hand, wrist, and fingers while putting on transmission cables in the cars. He testified that Hayes had went to the company doctor who had looked at her, but told her to go back to work. He testified that Hayes was unable to obtain any type of medical treatment at that time because she had no insurance coverage until October 1985. Izmiritian stated that the pain in Hayes's right wrist began radiating up the right arm associated with numbness. He stated that she went to Gaskin,

who examined her and referred her to about four or five doctors, (neurologist, gynecologist, rheumatologist, and orthopedic doctors). Hayes had a bone scan, a CAT scan, an EMG, and all were negative. Hayes also had many medical tests to rule out various types of arthritides, and all these were negative. Hayes also received physical therapy for a month at St. Louis University as an outpatient. Izmiritian testified that Hayes had been taking Tylenol Three, which is Tylenol with a quarter grain of codein in it, and Inderal, similar to a heart pill given for heart rhythm and blood pressure.

Izmiritian stated in his testimony that most of the doctors who saw Hayes thought she suffered a right thoracic outlet syndrome for which, for sometime she had not received treatment. He also testified that in 1979, while Hayes was operating an elevator at General Motors, transporting materials up and down, that the elevator "got stuck." In an attempt to jerk the door open Hayes suffered pain in her left side. The company doctor told her that she had internal bleeding, and was sent to a Dr. Spencer who found a hemmorrahic left ovary which was later removed.

Izmiritian further testified that Hayes denied ever having problems with her right hand, right wrist, or right arm prior to working for General Motors. He stated that Hayes's symptoms began and progressively worsened while she was employed by General Motors. He testified that Hayes suffered pain daily in her right wrist, the right hand, right arm, and right shoulder. In addition, she suffered weakness in the whole right arm, and pains that kept her awake at night. Hayes also had numbness in her upper arm, lower arm and fourth and fifth fingers on the right hand. The pains and weakness of the right arm made her job more difficult to perform. He further testified that Hayes stated that she was unable to perform any heavy housework, any cooking involving large pots and pans, and yard work, or difficult two-handed jobs.

Izmiritian testified that as a result of the physical examination conducted on Hayes

that he found that the right shoulder strength was fifty-five percent of that of the left shoulder strength. The strength of the right upper extremity was forty percent that of the strength of the left upper extremity strength at the wrist. He further found that the strength of the right upper extremity at the elbow was forty percent of that of the strength of the left upper extremity at the elbow. He also found sensory changes of the medial upper arm, lower arm, and fourth and fifth fingers on the right extremity.

Izmiritian testified that overall Hayes has a fifty percent permanent partial disability of the right upper extremity at the level of the right wrist as a result of her right wrist injury resulting from the accident of May 25, 1985. Additionally, Izmiritian found that Hayes has a twenty percent permanent partial disability of the body as a whole as a result of the right thoracic outlet syndrome resulting from the right wrist injury resulting from the same accident. He also found that Hayes has a ten percent pre-existing permanent partial disability of the body as a whole as a result of her internal abdominal hemorrhage and oophorectomy indirectly caused from the elevator accident at General Motors of 1979. Izmiritian found that because her present disabilities combine and concur with her pre-existing disability to create a greater overall disability than the simple sum and that Hayes would need further diagnostic studies and additional treatments for her thoracic outlet syndrome.

The record reveals that another doctor, Dr. William Richardson, (hereinafter Richardson), also examined Hayes on numerous occasions from late 1987 to early 1989. Richardson found Hayes suffered from a decreased range of motion of the neck and the right shoulder, and decreased grip strength in her right wrist. He also recommended that she receive physical therapy as an outpatient.

■ We have carefully reviewed all of the medical evidence and we believe the award is supported by competent and substantial evidence.

Judgment of the Labor and Industrial Relations Commission is affirmed.

KAROHL and GRIMM, JJ., concur.