Virginia M. MILLER and Dwayne William Miller, Appellants,

v.

SLEIGHT & HELLMUTH INK CO. and Liberty Mutual Insurance Company, Insurer, Respondents.

No. 53831.

Supreme Court of Missouri, Division No. 2.

Jan. 13, 1969.

Motion for Rehearing or to Transfer to the Court En Banc Denied Feb. 10, 1969.

William J. Marsh, Kansas City, for appellants, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel.

A Warren Francis, Lloyd A. Hamrick, Roger J. Staab, Kansas City, for respondents.

STOCKARD, Commissioner.

■ This is a proceeding for the recovery of death benefits under the Workmen's Compensation Act. The claimants are the widow and a minor child of the deceased employee. The award of the Industrial Commission denied compensation, and the claimants appealed to the circuit court where the award was affirmed. Since the minor child is a claimant, the right to the amount of the death benefits, which exceed $15,000, became vested at the time of the employee's death, and therefore appellate jurisdiction is in this court. Gennari v. Norwood Hills Corporation, Mo., 322 S.W. 2d 718.

William E. Miller was regularly employed by Sleight & Hellmuth Ink Company as a salesman and branch manager of the Kansas City office. He called on customers of his employer in the metropolitan Kansas City area and in Kansas and Oklahoma. He also supervised the activities of two other salesmen, one located in Kansas City and the other in Dallas, Texas. He did not maintain established hours of work but made calls on customers at his convenience and responded to calls from customers when the occasion demanded. Mr. Miller was furnished a company-owned automobile to use in his work, and his employer paid his travel expenses including lodging, meals, and the expenses of the automobile.

Mr. William Brunk, the employer's national sales manager, sent Mr. Miller to Dallas, Texas, in September 1963, to investigate the possibilities of employing a person to replace a salesman previously located there but who had terminated his employment the previous June. Mr. Miller left Kansas City in his employer's automobile and drove to Oklahoma City where on September 6 he spoke before a "Litho Club." He then flew to Dallas, and while there he used an automobile belonging to his employer which it had furnished to the salesman who had quit. On September 11, about five o'clock in the afternoon, Mr. Miller called on Mr. James A. White, Superintendent of the McCullers Press, a customer of Mr. Miller's employer, and discussed with him matters pertaining to his employer's business, including persons who might be employed as a salesman. He told Mr. White that he had some other calls to make, that he was going to pick up some ink and take it back to Kansas City, and that he planned to leave Dallas the following morning to start back to Kansas City. He also asked Mr. White to recommend a place to eat, and Mr. White suggested Dee Bee's Lounge. Mr. Miller left Mr. White's office about six-thirty o'clock.

Miss Billie Jo Mulanax testified that about seven or eight o'clock of the evening of September 11, 1963, an unnamed girl telephoned Mrs. Dorothy Ensign, her roommate and asked Dorothy if she would eat dinner with Mr. Miller. When Mr. Miller came to the apartment about nine or ten o'clock Dorothy was gone from the apartment, and Miss Mulanax and Mr. Miller went to Dee Bee's Lounge after first having a couple of drinks at the apartment. Miss Mulanax testified that Mr. Miller did not eat dinner at the lounge, but that they stayed there until the lounge closed at midnight. Mr. Miller took her to her apartment, arriving about twelve-thirty o'clock, and told her that he was going to go get something to eat. Neither Miss Mulanax nor Mrs. Ensign were customers of Mr. Miller's employer, and while with Miss Mulanax Mr. Miller did not purport to engage in any business on behalf of his employer.

About one o'clock of the morning of September 12, the automobile operated by Mr. Miller struck the center post of a railroad underpass in the City of Dallas, and as a result of this collision Mr. Miller was killed.

The findings and conclusions of the Industrial Commission were that Mr. Miller did not sustain an accident arising out of and in the course of his employment, and by its final award it disallowed any benefits under the Workmen's Compensation Act. This award was affirmed by the circuit court of Jackson County. While we consider the findings of fact to be less complete than contemplated by the applicable statutes, Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W.2d 136, appellants did not request more specific findings by the Commission, Groce v. Pyle, Mo.App., 315 S.W. 2d 482, in such situation the failure to find specifically the facts will not defeat an award, but a general award, such as we have here, implies a finding of the facts necessary to support it. Cebak v. John Nooter Boiler Works Co., Mo.App., 258 S.W.2d 262, 265. Such findings have been considered findings of ultimate facts and an award upon the whole evidence, which includes the credibility of the witnesses and the weight to be given their testimony. Damore v. Encyclopedia Americana, Mo., 290 S.W.2d 105, 108. While in this case there may be no conflict in the testimony of the witnesses, the testimony does permit conflicting inferences to be drawn, and the ultimate question is one of fact to be determined by the trier of the facts.

The judicial review of a workmen's compensation case is of the whole record, including the legitimate inferences to be drawn therefrom, in the light most favorable to the award of the Commission. The function of the court is to determine whether the Commission's findings, if supported by competent and substantial evidence, are

contrary to the overwhelming weight of the evidence. Brown v. Anthony Manufacturing Company, Mo., 311 S.W.2d 23, 27; Francis v. Sam Miller Motors, Mo., 282 S.W.2d 5.

■ Mr. Miller was in Dallas, Texas on his employer's business. His activities while traveling to Dallas and while there are somewhat comparable to those of a traveling salesman, and are considered incident to his employment so long as he performs them in a normal manner and does not step aside from his employment for personal reasons. Spradling v. International Shoe Co., 364 Mo. 938, 270 S.W.2d 28. However, "when an employee abandons or steps aside from his employment and duties connected therewith and engages in work or pleasure purely his own, and while so engaged receives accidental injuries, his employer is not liable because the accident does not arise out of and in the course of the employee's employment." Beem v. H. D. Lee Mercantile Co., 337 Mo. 114, 85 S.W. 2d 441, 443, 100 A.L.R. 1044; Weaver v. Norwich Pharmacal Co., 347 Mo. 995, 149 S.W.2d 846. See Smith v. Seaman & Schuske Metal Works Co., 344 Mo. 559, 127 S.W.2d 435; Kinkead v. Management & Engineering Corporation, Mo.App., 103 S. W.2d 545; Larson, Workmen's Compensation Law, § 25.00 et seq.; 99 C.J.S. Workmen's Compensation § 222b.

■ There is no question but that while Mr. Miller was with Miss Mulanax he was not engaged in any duty in connection with his employment. However, appellants argue that the death of Mr. Miller did not occur while he was with Miss Mulanax, but as stated in their brief, it occurred after he had left her at her apartment, and "at the actual time and place of his injury and death, William E. Miller was at a place where it was reasonable for him to be and had resumed his employment by being then and there engaged in getting something to eat, which under these facts and circumstances * * * was an act or activity incidental to his employment." Appellants

rely on such cases as Beem v. H. D. Lee Mercantile Co., 337 Mo. 114, 85 S.W.2d 441, 100 A.L.R. 1044, and Schulte v. Grand Union Tea & Coffee Co., Mo.App., 43 S.W. 2d 832, where it is held that even though an employee on a business trip for his employer deviates on a personal mission of his own, when the deviation has ended and the employee has returned to the business of his employer and is then injured by reason of an accident, the injury arises out of and in the course of his employment. See also 99 C.J.S. Workmen's Compensation § 222c. Appellants seem to take the position that as soon as Mr. Miller started to travel from the apartment of Miss Mulanax to go to a place to eat, even though at one o'clock in the morning after spending three or four hours on a personal mission of his own, he had then returned to the performance of the work of his employer.

■ When Mr. Miller abandoned his personal mission and returned to the performance of the duties of his employer is a question of fact to be determined by the Commission. The test of when a deviation begins or terminates is not so much a matter of the time consumed and the distance traveled, but rests primarily on whether the employer's or the employee's purpose is being served. 99 C.J.S. Workmen's Compensation § 222b, p. 747. In some situations while an employee is away from his employer's place of business in a traveling capacity, an injury sustained while traveling from a hotel or a place of business activity to a place to eat does arise out of and in the course of his employer's business. See Kohl v. International Harvester Co., 9 A.D.2d 597, 189 N.Y.S.2d 361, and Walker v. Speeder Machinery Corporation, 213 Iowa 1134, 240 N.W. 725. However, as stated in Larson, Workmen's Compensation Law, § 25.21, "it is quite possible to find, in particular circumstances, that a personal social motive was the occasion for the mealtime excursion." The Commission was not required to believe the testimony of Miss Mulanax that when Mr. Miller left her at about 12:30 o'clock in the morning he said

that he was going to eat. Damore v. Encyclopedia Americana, Mo., 290 S.W.2d 105. However, we think it reasonably safe to assume that Mr. Miller was either on his way back to his motel or to some place to eat, although the evidence does not show that the course he was traveling was toward either. But assuming the Commission did believe this testimony, it could still find that the travel from the apartment of Miss Mulanax at one o'clock in the morning after a social engagement of several hours duration to some place to eat was a continuation of the deviation for personal reasons of Mr. Miller, and that it was not an activity in the furtherance of the employer's business. See United States Fidelity & Guaranty Co. v. Skinner, 188 Ga. 823, 5 S.E.2d 9; Turner v. Industrial Commission, 268 Wis. 320, 67 N.W.2d 392; O'Connor v. Complete Machinery & Equipment Co., 5 A.D.2d 741, 168 N.Y.S.2d 702; Sandy v. Stackhouse, Inc., 258 N.C. 194, 128 S.E.2d 218; Edwards v. Industrial Commission, 94 Ariz. 342, 385 P.2d 219; Hebrank v. Parsons, Brinckerhoff, Hall & MacDonald, 88 N.J.Super. 406, 212 A.2d 579.

The effect of the finding of the Commission is that Mr. Miller deviated from his employment, and that at the time of the accident resulting in his death he had not reached a point where his employment could be said to have been resumed. Under the applicable law this finding was supported by competent and substantial evidence. It is not contrary to the overwhelming weight of the evidence, and as previously noted, that determination is the extent of our review.

The judgment is affirmed.

BARRETT, C., not sitting.

PRITCHARD, C., concurs.

FINCH, P. J., and DONNELLY and HOLMAN, JJ., concur.

MORGAN, J., not sitting because not a member of court when cause was submitted.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.