Terry Dale SMITH, Respondent,

v.

DISTRICT II A AND B, Fireman's
Fund Insurance Company,
Appellant.

No. WD 59545.

Missouri Court of Appeals,
Western District.

Nov. 6, 2001.

John R. Fox, Kansas City, MO, for appellant.

Mark L. Floyd, St. Louis, MO, for respondent.

Before ROBERT G. ULRICH, P.J., PATRICIA BRECKENRIDGE and JOSEPH M. ELLIS, JJ.

ROBERT G. ULRICH, P.J.

District II A and B American Maritime Officers and its insurer, Fireman's Fund Insurance Company, (collectively Employer) appeal the temporary/partial award[1] of the Labor and Industrial Relations Commission (Commission) awarding workers' compensation benefits to Terry Dale Smith. Employer claims that the Commission erred in determining that Mr. Smith's accident occurred within the course and scope of his employment. The Commission's award is affirmed.

This case involves a vehicular accident on February 20, 1998, in which Mr. Smith was injured. At the time of the accident, Mr. Smith was a union representative employed by Employer and lived in Kirkwood, Missouri. At approximately 3:00 a.m. on the day of the accident, Mr. Smith left his home in the St. Louis area and traveled to Kansas City to conduct business for Employer. The purpose of the trip was to meet with union members employed by Penske Logistics, a trucking firm, who had filed for decertification of Employer's union. Mr. Smith was to persuade the union members to maintain their relationship with Employer. Mr. Smith's plan to accomplish this goal was to speak to the union members at Penske about the problems and issues that formed the basis of the possible decertification and then discuss them with the management of Penske in an attempt to resolve any differences between the two groups. Mr. Smith hoped to demonstrate to the Penske union members that American Maritime Officers was providing effective union representation and, therefore, should be retained as

---

1. Generally, a temporary or partial award of workers' compensation benefits is not appealable. *Leslie v. School Servs. and Leasing, Inc.,* 947 S.W.2d 97, 99 (Mo.App. W.D.1997). Appellate review is, however, permissible where the issue is one of liability. *Id.* Because the only issue presented in this appeal is the liability of Employer, appellate review is permissible.

the designated union for Penske's employees.

Mr. Smith arrived at the Penske plant at approximately 8:00 a.m. He spent the day speaking with union members and management personnel discussing various problems and issues. Before eating a small lunch, Mr. Smith checked into a Holiday Inn because he intended to stay the night in Kansas City before driving back to the St. Louis area the next day. At the end of the day, at approximately 5:00 p.m., as Mr. Smith was planning to return to his hotel room, he was invited by Penske managers to go to the Argosy Casino to further discuss the possible decertification. Mr. Smith accepted the invitation.

Mr. Smith drove his own vehicle to the casino following one of the Penske managers. In the restaurant at the casino, Mr. Smith spoke with at least four Penske managers about the possible decertification of Penske union members. At some point during the evening, the wives of some of the managers arrived at the casino. The Penske payroll clerk also arrived later at the casino. Mr. Smith drank two alcoholic drinks (Bloody Marys) while he talked with the managers. All of the Penske managers and their wives left the casino no later than 8:00 p.m. The payroll clerk, however, remained at the casino with Mr. Smith after the others left.

When Mr. Smith finally left the casino that evening to return to his hotel, he exited the parking lot in his vehicle turning right onto what he thought was a highway access ramp. He, however, found himself on an outer road. As he was driving on the outer road, Mr. Smith used his cellular phone to check his voice mail messages. The road suddenly made a 90–degree turn, and Mr. Smith attempted to stop his automobile. Instead, his vehicle skidded off the road down an embankment and hit a parked train. Mr. Smith lost consciousness for an "undeterminable" amount of time. When he awoke, the vehicle was on fire and full of smoke. Mr. Smith unbuckled his seat belt, opened the door, fell out of the vehicle, and dragged himself away from it.

Highway patrol officers and paramedics arrived at the accident scene. A highway patrolman asked Mr. Smith his name, and Mr. Smith responded, "Dale Earnhardt," a famous race car driver. Mr. Smith was transported by ambulance to a hospital. The patrolman indicated on his accident report that the time of the accident was 10:45 p.m. He also reported that "drinking" was a probable contributing circumstance of the accident. Both the Highway Patrol and the hospital tested Mr. Smith's blood alcohol content after the accident. The lab results showed .15% and .169%, respectively.

Mr. Smith suffered a severe comminuted fracture of the right femur resulting in multiple surgeries. He spent three days in the hospital immediately after the accident. As a result of the accident, Mr. Smith pleaded guilty to driving under the influence, and his driving privileges were suspended.

Mr. Smith filed a workers' compensation claim for the injuries he sustained in the vehicle-train accident. The Administrative Law Judge ruled against Mr. Smith, finding that his injuries did not arise out of and in the course of his employment. The Commission reversed the ALJ and awarded workers' compensation benefits to Mr. Smith. This appeal by Employer followed.

## Points on Appeal

Employer raises four points on appeal. Employer claims that the Commission erred in determining that Mr. Smith's accident occurred within the course and scope

of his employment because, at the time of the accident, Mr. Smith was intoxicated to the extent that his mind was a "total blank" and, thus, he could not further Employer's business. Employer argues that the Commission erred in disagreeing with the credibility findings of the ALJ regarding Mr. Smith's testimony on this issue. Employer also argues that the Commission erred in failing to determine that, as a matter of law, Mr. Smith was not in the course and scope of his employment where Mr. Smith's job required him to drive a motor vehicle and at the time of the accident, he was illegally driving with a blood alcohol content exceeding that permitted by law. Finally, Employer argues that the accident did not arise out of and in the course of Mr. Smith's employment because Mr. Smith deviated from and did not return to the business of Employer after he departed the casino where he had spoken to Penske management.

### Standard of Review

 Section 287.495 provides the standard of review for an appellate court in a workers' compensation case. It states in relevant part:

> The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the commission do not support the award;
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.495.1.[2] An appellate court reviews the findings and award of the Commission, not those of the ALJ. *Davis v. Research Med. Ctr.,* 903 S.W.2d 557, 569 (Mo.App. W.D.1995). Review of an award of the Commission involves a two step process. *Id.* at 571. First, the reviewing court must examine the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the award is supported by competent and substantial evidence. *Id.* In this step, the appellate court may disregard the credibility determinations of the ALJ because it is viewing the evidence in the light most favorable to the award. *Id.* at 570.

If the appellate court finds competent and substantial evidence to support the award, it then reviews the entire record, including evidence unfavorable to the award, to determine whether the award is against the weight of the evidence. *Id.* at 571. In this second step of review, the ALJ's credibility determinations that are contrary to the Commission's credibility determinations are considered. *Id.*

> Because the ALJ's findings and credibility determinations are part of the record as a whole, when the Commission's determinations as to the credibility of witnesses who gave live testimony before the ALJ are different from those made by the ALJ, the ALJ's contrary findings must be given due consideration, bearing in mind that evidence supporting a conclusion may be less substantial when an impartial, experienced ALJ who has observed the witnesses and lived with the case has drawn conclusions different from the Commission's.

*Id.* at 570–571.

### Intoxication

 In the first two points addressed in this appeal, Employer claims that Mr.

---

**2.** All statutory references are to RSMo 2000 unless otherwise indicated.

Smith's injuries did not arise out of and in the course of his employment because at the time of the accident, he was intoxicated to the extent that his mind was a "total blank." Employer also argues that the Commission erred in disagreeing with the credibility findings of the ALJ regarding Mr. Smith's testimony on this issue.

 For intoxication to bar an employee's recovery of workers' compensation benefits, evidence must be presented that, at the time of the injury, the employee was intoxicated to such an extent that it was impossible for him to physically and mentally engage in his employment. *Gee v. Bell Pest Control,* 795 S.W.2d 532, 536 (Mo.App. W.D.1990). Mere evidence of a high blood alcohol content is insufficient to support a denial of a workers' compensation claim on the basis of intoxication. *Id.* To be denied compensation on the basis of intoxication, the employee must be intoxicated to the point where his mind is a "total blank" due to intoxication. *Id.* at 536–537. Whether an employee was intoxicated to such an extent that he could not be engaged in the furtherance of his employer's business is a question of fact for the Commission. *Id.* at 537.

The Commission found that Mr. Smith was not so intoxicated at the time of the accident that his mind was a "total blank." It found that Mr. Smith's fatigue, unfamiliarity with the area, and excessive speed at which the vehicle was driven for the road conditions likely contributed to the cause of the accident as much as or more than his use of alcohol. The record contained competent and substantial evidence to support this finding.

The evidence viewed in the light most favorable to the award is that Mr. Smith drank two Bloody Marys at the casino on the night of the accident. One of the Penske managers testified that Mr. Smith did not appear intoxicated when the manager left the casino at approximately 8:00 p.m. Mr. Smith testified that on that evening he was stressed and physically tired from his long day that began at 3:00 a.m. He testified that after he left the casino to return to his hotel, he found himself on a dark outer road of the highway. He stated that as he was reviewing his voice mail messages with his cellular phone, the road suddenly made a 90–degree turn. Mr. Smith testified that he attempted to stop his automobile, and 54 feet of skid marks at the scene corroborated his statement. Mr. Smith's vehicle, however, skidded off the road down an embankment and hit a parked train. Mr. Smith testified that he lost consciousness for an "undeterminable" amount of time and that when he awoke, the vehicle was on fire and full of smoke. He unbuckled his seat belt, opened the door, fell out of the vehicle, and dragged himself away from it. When highway patrol officers and paramedics arrived at the accident scene, Mr. Smith was asked his name, and he responded, "Dale Earnhardt," a famous race car driver. Mr. Smith testified that his response to the highway patrolman was meant to be humor. Finally, Dr. Raymond Cohen, a neurology specialist who reviewed Mr. Smith's medical records in this case and interviewed Mr. Smith twice, opined that Mr. Smith's mind was not a complete blank from intoxication at the time of the accident. Dr. Cohen testified that he found no information in Mr. Smith's medical records to indicate that Mr. Smith's mind was a complete blank at the time of the accident. Furthermore, Dr. Cohen stated that nothing in the ambulance notes or hospital records indicated that Mr. Smith's behavior after the accident was in any way affected by alcohol. Competent and substantial evidence was present to support the Commission's finding that Mr. Smith

was not so intoxicated at the time of the accident that his mind was a "total blank."

Neither was the Commission's finding against the weight of the evidence. In concluding that Mr. Smith was intoxicated to the extent that he was physically and mentally incapable of engaging in his employment, the ALJ focused on Mr. Smith's blood alcohol content after the accident; the highway patrol's accident report, including Mr. Smith's response to the highway patrolman's questions; and Mr. Smith's guilty plea to the charge of driving under the influence of alcohol. As stated previously, evidence of a high blood alcohol content alone is insufficient to support a denial of a workers' compensation claim on the basis of intoxication. *Id.* at 536.

The ALJ's conclusion also expressed that Mr. Smith's trial testimony was not credible. The ALJ based this finding on Employer's attempted impeachment of Mr. Smith during cross-examination with his deposition testimony. Mr. Smith acknowledged on cross-examination that during his deposition on June 8, 1999, he testified that he could not recall anything from the time the Penske managers left the casino until the time of the accident. The ALJ explained that because Mr. Smith "testified very specifically and unambiguously at his discovery deposition that he recalled absolutely nothing after the Penske management people left the Casino up until his accident," his version of events as he related them at trial was not credible. The ALJ also found Mr. Smith's testimony that he lost consciousness for a time after the accident not to be credible. Mr. Smith's medical records indicated that he told medical personnel at the hospital after the accident that he never lost consciousness.

The Commission disagreed with the ALJ's determination of Mr. Smith's credibility. Where the Commission's credibility determination regarding a live witness differs from that of the ALJ, the Commission provides "a great aid to the reviewing court if [it] articulates the reasons why it differed in its credibility determinations." *Whiteman v. Del–Jen Constr., Inc.,* 37 S.W.3d 823, 833 (Mo.App. W.D.2001)(quoting *Davis,* 903 S.W.2d at 571). The Commission explained its disagreement with the ALJ's credibility findings. During his cross-examination, Mr. Smith explained why he could not recall during his deposition the events after the Penske managers left the casino on the night of his accident. He testified that at the time of the deposition, he was ill prepared to sit down and testify for more than four hours. He also testified that his memory had improved from the day of the deposition to the day of trial on April 26, 2000, because he "had a long period of time to think about this accident, to remember the specific steps that took on and transpired during the day." The Commission cited this testimony and further found, "We find it credible that one's memory might improve with time when there has been a traumatic incident and the individual has had time to reflect upon the events." The Commission also explained, "Dr. Cohen said the pain in [Mr. Smith's] leg and any pain medication given him could have affected the responses he gave to emergency room personnel, such as whether he lost consciousness."

The Commission's explanation for disagreeing with the ALJ on the issue of Mr. Smith's credibility was reasonable. The stated reasons for differing with the ALJ indicated that the Commission "did not callously ignore, capriciously reject, or arbitrarily disregard [the ALJ's] findings on the issue of credibility of the witnesses who testified before [the ALJ], but duly considered them in reaching its contrary result." *Davis,* 903 S.W.2d at 574. Thus, considering the whole record, including the

ALJ's findings, the Commission's finding that Mr. Smith was not so intoxicated at the time of the accident that his mind was a "total blank" was not against the weight of the evidence. The points are denied.

■ Next, Employer asks this court to find, as a matter of law, that Mr. Smith was not in the course and scope of his employment when the vehicular accident occurred because his job required him to drive a motor vehicle and he was then illegally driving under the influence of alcohol. The Missouri General Assembly has enacted legislation that relieves an employer from the duty of providing workers' compensation benefits when an employee violates a known and posted alcohol policy of the employer and that violation is a proximate cause of the injury. § 287.120.6; *Higgins v. D.W.F. Wholesale Florists*, 14 S.W.3d 286, 290 (Mo.App. W.D.2000). Further limitation on the recovery of workers' compensation benefits as suggested by Employer is also for the legislature, not this court, to adopt. *Phillips v. Air Reduction Sales Co.*, 337 Mo. 587, 85 S.W.2d 551, 555 (1935); *Gee*, 795 S.W.2d at 537. Until the legislature does so, this court cannot deny workers' compensation because of intoxication unless an employee was intoxicated to such an extent that it was impossible for him to physically and mentally engage in his employment. *Phillips*, 85 S.W.2d at 555; *Gee*, 795 S.W.2d at 537. The point is denied.

### Deviation

■ In its last point on appeal, Employer contends that the accident did not arise out of and in the course of Mr. Smith's employment because Mr. Smith deviated from and had not returned to the business of Employer when the accident occurred. To be compensable under workers' compensation, an employee's injury must arise out of and in the course of his employment. § 287.120.1. Generally, injuries sustained by an employee while going to or coming from work do not arise out of and in the course of employment. *Cox v. Tyson Foods, Inc.*, 920 S.W.2d 534, 535 (Mo. banc 1996). An exception to this general rule involves an employee whose work entails travel away from the employer's premises. *Miller v. Sleight & Hellmuth Ink Co.*, 436 S.W.2d 625, 628 (Mo. 1969). In the case of a traveling employee, the employee is considered to be in the course of his employment continuously during the trip except when a distinct departure on a personal errand is shown. *Id.; Baldridge v. Inter–River Drainage Dist.*, 645 S.W.2d 139, 140 (Mo.App. S.D. 1982); 2 ARTHUR LARSON, LARSON'S WORKERS' COMPENSATION LAW § 25.01 (2001). When an employee abandons his employment and engages in work or pleasure purely his own, his employer is not liable for any accidental injuries sustained by the employee while so engaged because the accident does not arise out of and in the course of the employee's employment. *Miller*, 436 S.W.2d at 628. When, however, the employee's deviation has ended and he has returned to the business of his employer, any accidental injuries then sustained by the employee arise out of and in the course of his employment. *Id.*

■ "The test of when a deviation begins or terminates is not so much a matter of the time consumed and the distance traveled, but rests primarily on whether the employer's or the employee's purpose is being served." *Id.* Such determination is a question of fact for the Commission. *Id.* In the case of a traveling employee, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home to perform the employer's purpose are usually compensable. *Id.; LARSON, supra* § 25.01. In particular circumstances, however, a finding

that a personal social motive was the occasion for an excursion that would otherwise be in the course of employment is quite possible. *Miller*, 436 S.W.2d at 628; LARSON, *supra* § 25.03[1]. Such was the finding in the 1969 Missouri Supreme Court case, *Miller v. Sleight & Hellmuth Ink Co.*, 436 S.W.2d 625 (Mo.1969).

In *Miller*, the employee, a salesman, was sent by his employer to Dallas, Texas, to hire another salesman. *Id.* at 627. The employee was in Dallas for several days and made numerous business calls on customers. *Id.* On his last evening in Dallas, he had drinks with a woman at her apartment and then at a lounge. *Id.* When the lounge closed at midnight, the employee took the woman back to her apartment. *Id.* The employee left the woman's apartment at approximately 12:30 a.m. telling her he was going to go get something to eat. *Id.* At approximately 1:00 a.m., the automobile operated by the employee struck the center post of a railroad underpass, and the employee was killed in the collision. *Id.*

The employee's widow and minor child filed a claim for death benefits under the Workers' Compensation Act. *Id.* at 626. The Commission denied compensation finding that the employee did not sustain an accident arising out of and in the course of his employment. *Id.* at 627. In affirming the Commission's decision denying compensation, the Missouri Supreme Court explained that, assuming the Commission believed the testimony that the employee was going to eat after he left the woman's apartment,

> it could still find that the travel from the apartment of [the woman] at one o'clock in the morning after a social engagement of several hours duration to some place to eat was a continuation of the deviation for personal reasons of the employee, and that it was not an activity

in the furtherance of the employer's business.

*Id.* at 629.

In this case, the Commission found that Mr. Smith deviated from his work when he decided to stay at the casino for a period of time after the Penske managers with whom he had discussed decertification issues in behalf of his employer departed but that the deviation ended when Mr. Smith stepped outside the casino to return to his hotel. Such finding was supported by competent and substantial evidence in the record and was not against the weight of the evidence. The evidence revealed that Mr. Smith traveled from the St. Louis area to Kansas City to meet with Penske union members and managers about the union members' possible decertification and that he planned to stay overnight in a hotel to facilitate the performance of his employer's purpose. The evidence was undisputed that at the end of the business day as Mr. Smith was planning to return to his hotel, he was invited to the casino by a Penske manager to further discuss the possible decertification. At the casino, Mr. Smith met with several Penske managers about the possible decertification. Unlike the deviation in *Miller*, Mr. Smith's excursion to the casino was initially to conduct company business. Although Mr. Smith had a personal social motive for remaining at the casino for almost three hours after the Penske managers departed, Employer's purpose was being served as Mr. Smith returned to his hotel from the casino where he had earlier conducted Employer's business. Competent and substantial evidence supported the Commission's finding that for a traveling employee such as Mr. Smith, the injuries he sustained arising out of the necessity of sleeping in a hotel away from home to perform his employer's purpose were compensable. The Commission did not err in determin-

ing that Mr. Smith's accident occurred within the course and scope of his employment. The point is denied.

The Commission's award is affirmed.

BRECKENRIDGE, J., and ELLIS, J. concur.