**James R. DOERR, Appellant/Cross–Respondent,**

v.

**TETON TRANSPORTATION, INC., Respondent/Cross–Appellant.**

Nos. 28686, 28698.

Missouri Court of Appeals, Southern District, Division Two.

July 9, 2008.

Kevin H. Dunaway and Courtney A. Nelson, Neale & Newman, L.L.P., Springfield, for Appellant.

Juan F. Arias, Holtkamp, Liese, Schultz & Hilliker, P.C., St. Louis, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Appellant/Cross–Respondent James Doerr ("Claimant") files his appeal (No. 28686) from the Labor and Industrial Relations Commission's ("the Commission") "Temporary Award Allowing Compensation (Modifying Award and Decision of Administrative Law Judge and Denying Motion for Additional Costs)" ("the Commission's Temporary Award"). He asserts two points of Commission error.

Respondent/Cross–Appellant Teton Transportation ("Employer") also appeals (No. 29698, which is now consolidated with No. 28686) from the Commission's Temporary Award positing two points of Commission error.[1] Additionally, Employer filed a "Motion to Dismiss Appeal of [Claimant] for Lack of Appellate Jurisdiction." We shall first address this motion after a brief recitation of the facts.

The record reveals Claimant filed his "Claim for Compensation" with the Missouri Division of Worker's Compensation ("the Division") on December 12, 2005, in which he asserted that on or about August 6, 2005, he was injured "[w]hile in the scope and course of his employment ..." with Employer. Claimant asserted that while in Dalton, Georgia, as an over-the-road truck driver, he "was exiting his truck and stepped down into a pot hole twisting his right ankle and falling onto his buttocks thereby causing the injuries and disabilities complained of." Employer filed an answer on January 12, 2006, in which it stated it was "without knowledge or information sufficient to form a belief as

---

1. Cherokee Insurance, Employer's workers compensation insurance provider, appeared in this matter before the Commission, but does not participate in this appeal.

to the truth of [Claimant's] allegations" and it denied the allegations in Claimant's claim. Later, Employer maintained Claimant was on a personal deviation from his assigned route at the time of his accident and injury and, therefore, his injuries did not arise out of and in the course of his employment with Employer. Additionally, Employer asserted Claimant failed to prove timely actual/written notice of his accident; thus, Employer was prejudiced by the lack of proper notice.

On October 20, 2006, a hearing requesting a "Temporary Hardship Award" was held before an Administrative Law Judge ("ALJ"). The ALJ issued its "Temporary or Partial Award" on January 8, 2007, and made the following findings of facts and rulings of law: Claimant's accident arose in the course of his employment with Employer; Claimant had not deviated from the course of his employment at the time of the accident; Claimant's employment related accident caused the injuries and disabilities for which he was claiming benefits; and Claimant properly gave notice to Employer of his accident. As a result of these findings, the ALJ ordered Employer to pay Claimant's past and future medical expenses and ordered Employer to pay Claimant temporary total disability. Further, the ALJ found Claimant was entitled to attorney fees and costs pursuant to section 287.560.[2]

Employer filed its "Application for Review" with the Commission on January 25, 2007. Claimant then filed a request for additional costs and attorney's fees associated with having to defend against Employer's "Application for Review."

On July 26, 2007, the Commission's Temporary Award was issued. The Commission's Temporary Award affirmed the factual findings of the ALJ, the award of past and future medical expenses, and temporary total disability benefits; however, the Commission reversed the ALJ's award of costs to Claimant. The Commission also denied Claimant's request for additional attorney's fees and costs. The Commission further stated that "[t]his award is only temporary or partial, is subject to further order, and the proceedings are hereby continued and kept open until a final award can be made. All parties should be aware of the provisions of section 287.510."[3]

---

2. Section 287.560 sets out, in part pertinent, that:

> if the [D]ivision or the [C]ommission determines that any proceedings have been brought, prosecuted or defended without reasonable ground, it may assess the whole cost of the proceedings upon the party who so brought, prosecuted or defended them. The [D]ivision or the [C]ommission may permit a claimant to prosecute a claim as a poor person as provided by law in civil cases.

All statutory references are to RSMo 2000, unless otherwise stated.

We note this matter was decided under the law in effect at the time of Claimant's injury, which was prior to the August 28, 2005, effective date of the "significant changes to the Workers' Compensation Act in Senate Bill 1 . . . ." *Custer v. Hartford Ins. Co.,* 174 S.W.3d 602, 626 n. 3 (Mo.App.2005).

In this connection, recently this Court in *Norman v. Phelps County Regional Medical Center,* No. 28646, 256 S.W.3d 202, 2008 WL 2497206 (Mo.App. S.D., filed June 24, 2008), noted that the changes to the Act require reviewing courts in post-August 28, 2005, injuries to strictly construe the provisions of the Act's chapter and, accordingly, determined that the prior judicially-created exception to section 287.510, permitting appeals from a temporary or partial award, violated the clear legislative intent to limit appellate review of Commission awards to final awards only and dismissed the *Norman* Employer's appeal from the temporary or partial award of the Commission.

3. Section 287.510 states:

> [i]n any case a temporary or partial award of compensation may be made, and the same may be modified from time to time to

On August 24, 2007, Claimant filed his notice of appeal in this Court. Employer then filed its notice of appeal on August 27, 2007.

In his first point on appeal, Claimant asserts the Commission erred in reversing the ALJ's award of costs and attorney's fee in his favor and in denying him additional costs associated with Employer's appeal to the Commission because the Commission acted in excess of its powers. He maintains "the regulations governing the Commission do not allow it to review the issue of costs when the award in question is a temporary or partial order."

In his second point on appeal, Claimant maintains that "[e]ven if the Commission had authority to review the issue of costs," it erred in reversing the ALJ's "award of costs and attorney's fees and in denying [his] motion for additional costs associated with [Employer's] appeal to the Commission," because "the Commission's actions were not supported by competent and substantial evidence, in that the overwhelming weight of the evidence presented shows that [Employer] acted unreasonably in denying liability and defending against [Claimant's] claim."

In its cross-appeal, Employer maintains in its first point relied on that "[t]he Commission erred in finding that [Claimant] sustained an accident arising out of and in the course of his employment," because there was not substantial and competent evidence in the record supporting the Commission's findings and such findings were "contrary to the overwhelming weight of the evidence which showed that [Claimant] was on a personal deviation at the time of his accident." In its second point, Employer posits Commission error in the Commission's findings that Claimant had provided proper, written notice of his accident to Employer within the time allotted by law; thus, Employer maintains this lack of timely, written notice prejudiced Employer.

As previously related, Employer has filed its "Motion to Dismiss Appeal of [Claimant] For Lack of Appellate Jurisdiction." The Court takes up Employer's motion to dismiss and determines it has merit and, accordingly, dismisses Claimant's appeal. The Court also takes up Employer's points on appeal and determines they lack merit.

■ In its motion to dismiss, Employer maintains that appeals to this Court are authorized pursuant to section 287.495.1 [4]

meet the needs of the case, and the same may be kept open until a final award can be made, and if the same be not complied with, the amount thereof may be doubled in the final award, if the final award shall be in accordance with the temporary of partial award.

4. Section 287.495.1 states
*The final award of the [C]ommission* shall be conclusive and binding unless either party to the dispute shall, within thirty days from the date of the final award, appeal the award to the appellate court. The appellate court shall have jurisdiction to review all decisions of the [C]ommission pursuant to this chapter where the [D]ivision has original jurisdiction over the case. Venue as established by subsection 2 of section

287.640 shall determine the appellate court which hears the appeal. Such appeal may be taken by filing notice of appeal with the [C]ommission, whereupon the [C]ommission shall, *under its certificate, return* to the court all documents and papers on file in the matter, together with a transcript of the evidence, the findings and award, which shall thereupon become the record of the cause. *Upon appeal no additional evidence* shall be heard and, in the absence of fraud, the findings of fact made by the [C]ommission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

from a "final award of the [C]ommission" and there is no statutory authority which allows an appeal from a temporary or partial award based on the specific claims raised by Claimant. We agree.

 It has long been held that courts of appeal have no appellate jurisdiction in workers' compensation cases except "as expressly conferred by statute." *Bolden v. Schnucks Markets, Inc.,* 167 S.W.3d 226, 228 (Mo.App.2005).

> Section 287.495 authorizes an appeal from the final award of the Commission to the appellate court. A final award is one which disposes of the entire controversy between the parties. An order lacks finality where it remains tentative, provisional, contingent, subject to recall, revision or reconsideration by the issuing agency. No appeal lies from a temporary or partial award made pursuant to section 287.510.

*Alcorn v. McAninch Corp.,* 236 S.W.3d 111, 114 (Mo.App.2007) (internal citations and quotations omitted); *see also Petelik v. Motor Control Specialists,* 190 S.W.3d 517, 520 (Mo.App.2006). However, there are two exceptions to this rule. *See Den-*

*nis v. H & K Machine Service Co.,* 186 S.W.3d 484, 486 (Mo.App.2006). "First, [an appeal may be taken] where an award designated 'temporary and partial' is not entered pursuant to section 287.510 but is an award of permanent total disability pursuant to section 287.200.2." *Alcorn,* 236 S.W.3d at 114; *see Dennis,* 186 S.W.3d at 486. This exception is not relevant to the present matter.

 "The second exception states, as a general rule, that an appellate court may review the issue of the employer's liability where an employer claims it is not liable for paying *any* compensation and is disputing *all* liability." *Alcorn,* 236 S.W.3d at 115 (emphasis added). "[I]t has been stated, 'a court can review the issues on which liability turns, such as notice or whether an employee's injuries are work-related.'" *Id.* (quoting *Korte v. Fry–Wagner Moving & Storage Co.,* 922 S.W.2d 395, 398 (Mo. App.1996)).

This second exception derives from the procedure set forth in 8 C.S.R. 20–3.040.[5] This regulation provides for prompt review by the Commission, on issues of liability, from temporary or partial orders of [ALJs]. The regulation

(1) That the [C]ommission acted without or in excess of its powers;
(2) That the award was procured by fraud;
(3) That the facts found by the [C]ommission do not support the award;
(4) That there was not sufficient competent evidence in the record to warrant the making of the award.
(Emphasis added).

5. 8 C.S.R. 20–3.040 sets out:
(1) Whenever an [ALJ] issues a temporary or partial award under section 287.510 ... the same shall not be considered to be a final award from which an application for review (see 8 CSR 20–3.030) may be made. The time for making an application for review shall not commence until a final award is issued by the [ALJ] in cases where a temporary or partial award has been issued.

(2) Any party who feels aggrieved by the issuance of a temporary or partial award by any [ALJ] may petition the [C]ommission to review the evidence upon the ground that the applicant is not liable for the payment of any compensation and especially setting forth the grounds for the basis of that contention and where the evidence fails to support findings of the [ALJ] as to liability for the payment of compensation. The [C]ommission will not consider applications or petitions for the review of temporary or partial awards where the only contention is as to the extent or duration of the disability of the employee for the reason that the [ALJ] has not made a final award and determination of the extent or duration of disability.

allows a party to file an application for review with the Commission after the issuance of a temporary or partial award by the ALJ, upon the ground that the party is not liable for payment of any compensation.

*Muller v. St. Louis Housing Authority,* 175 S.W.3d 191, 194–95 (Mo.App.2005).

In examining Employer's motion to dismiss, we begin by exploring the points relied on in the present matter to determine whether they raise issues within the purview of this Court's statutory authority. Claimant's first point challenges the Commission's authority to review the issue of costs when the award arises from a temporary or partial order. Likewise, in his second point, Claimant maintains that even if the Commission had authority to review the issue of costs, it erred in reversing the ALJ's award because its actions were not supported by competent and substantial evidence.

▮ Based on the points asserted, we determine this Court does not have jurisdiction to review Claimant's assertion. As recited in *Alcorn,* 236 S.W.3d at 114, appellate courts may only review temporary or partial orders of the Commission under two scenarios: where the award of permanent or total disability pursuant to section 287.200.2 is at issue or when the issue is of the employer's liability and "an employer claims it is not liable for paying any compensation and is disputing all liability." Claimant's points do not fall within either factual scenario.[6] *See Korte,* 922 S.W.2d at 398. "Only a 'final award' of the Commission is appealable." *Chapman,* 63 S.W.3d at 306. "The Commission's [Temporary Award] here is not a final award, because it does not dispose of the entire controversy between the parties." *Id.* at

307. Instead, it is clearly a temporary or partial award under section 287.510. Employer's "Motion to Dismiss Appeal of [Claimant] for Lack of Appellate Jurisdiction" is sustained. Appeal number 28686 is dismissed.

We now examine Employer's cross-appeal and its points relied on. Employer's first point relied on asserts the Commission erred in finding Claimant's accident arose "out of and in the course of his employment" because there was evidence Claimant "was on a personal deviation at the time of his accident." Employer then urges in his second point relied on that the Commission erred in finding Claimant properly and timely notified Employer of his accident.

As stated previously, this Court has the power to review temporary or partial awards of the Commission "where an employer claims it is not liable for paying *any* compensation and is disputing *all* liability." *Alcorn,* 236 S.W.3d at 115 (emphasis added). Appellate courts can clearly review liability issues such as whether an injury is work-related and whether proper notice was given to Employer. *Id.; Korte,* 922 S.W.2d at 398.

In its first point relied on, Employer asserts the Commission misapplied the law to the facts and its findings were not supported by competent and substantial evidence because "the overwhelming weight of the evidence ... showed that [Claimant] was on a personal deviation at the time of his accident."

▮ " 'In reviewing a workers' compensation award, we review the findings of the Commission and not those of the ALJ.' " *Clayton v. Langco Tool & Plas-*

---

**6.** We note that Claimant has not challenged the Commission's jurisdiction to enter the Commission's Temporary Award by means of seeking a writ of prohibition. *See Chapman v. Didion & Sons Foundry Co.,* 63 S.W.3d 305, 307 n. 2 (Mo.App.2001).

*tics, Inc.*, 221 S.W.3d 490, 491 (Mo.App. 2007) (quoting *Banks v. Springfield Park Care Center*, 981 S.W.2d 161, 163 (Mo.App. 1998)). "Where, as here, the Commission's award attached and incorporated the ALJ's award and decision, we consider the findings and conclusions of the Commission as including the ALJ's award." *Id.*

It has long been held that upon review of a worker's compensation matter, an appellate court may modify, reverse, remand for rehearing, or set aside the award of the Commission only if it determines that the Commission acted in excess of its powers; the award was procured by fraud; the facts found by the Commission do not support the award; or there was not sufficient competent evidence in the record to warrant making the award. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222 (Mo. banc 2003).[7] "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Id.* at 223. "Only in rare cases will we find an award by the Commission to be contrary to the overwhelming weight of the evidence." *Martin v. Town and Country Supermarkets*, 220 S.W.3d 836, 844 (Mo. App.2007). Further, "we must determine whether the Commission reasonably could have made its findings and reached its result based upon all of the evidence before it." *Fitzwater v. Dept. of Public Safety*, 198 S.W.3d 623, 627 (Mo.App.2006). However, "we defer to the Commission on issues involving the credibility of witnesses and the weight to be given their testimony." *Martin*, 220 S.W.3d at 844. "Therefore, our review is limited in that it 'does not extend to issues of witness credibility.'" *Clayton*, 221 S.W.3d at 492 (quoting

*Blackwell v. Puritan–Bennett Corp.*, 901 S.W.2d 81, 86 (Mo.App.1995)).

■ "Where the facts are disputed, at least one reported case has held that 'causation and work-relatedness are questions of fact.'" *Bennett v. Columbia Health Care*, 80 S.W.3d 524, 527 (Mo.App.2002) (quoting *Cahall v. Cahall*, 963 S.W.2d 368, 372 (Mo.App.1988)). The Commission's factual findings "are conclusive, absent fraud, provided the findings are supported by competent and substantial evidence." *Id.* at 527–28. However, "when the pertinent facts are not in dispute, the issue of whether an accident arose out of and in the course of employment is a question of law requiring *de novo* review." *Id.* at 528.

■ "To be compensable under worker's compensation, employee's injury must be due to an accident arising out of and in the course of employment." *Cox v. Tyson Foods, Inc.*, 920 S.W.2d 534, 535 (Mo. banc 1996); *see* § 287.120.1.

> The general rule is that an injury is one that 'arises out of' the employment if it is a natural and reasonable incident thereof and it is 'in the course of employment' if the action occurs within a period of employment at a place where the employee may reasonably be fulfilling the duties of employment.'

*Custer v. Hartford Ins. Co.*, 174 S.W.3d 602, 610 (Mo.App.2005) (quoting *Clancy v. Armor Elevator Co.*, 899 S.W.2d 123, 125 (Mo.App.1995)). Generally, injuries sustained by an employee while going to or coming from work do not arise out of and in the course of employment. *Id.; see also Cox*, 920 S.W.2d at 535. "'While this is the general rule, the principle may be modified by the particular facts, circum-

---

**7.** We note several cases overruled by *Hampton*, 121 S.W.3d at 224–32, to the extent they are in conflict with the holding therein, are cited in this opinion in support of other principles of law not affected by the *Hampton* ruling. No further acknowledgment of *Hampton's* effect on those cases needs to be recited hereafter.

stances and situations resulting in various and varied exceptions in order to accommodate both the employer and the employee.'" *Custer,* 174 S.W.3d at 611 (quoting *McClain v. Welsh Co.,* 748 S.W.2d 720, 725 (Mo.App.1988)).

■ An exception to this general rule involves an employee whose work entails travel away from the employer's premises. *Custer,* 174 S.W.3d at 611. "In the case of a traveling employee, the employee is considered to be in the course of his employment continuously during the trip except when a distinct departure on a personal errand is shown." *Smith v. District II A and B,* 59 S.W.3d 558, 565 (Mo.App.2001). "When an employee abandons his employment and engages in work or pleasure purely his own, his employer is not liable for any accidental injuries sustained by the employee while so engaged because the accident does not arise out of and in the course of the employee's employment." *Id.* "'The test of when a deviation begins or terminates is not so much a matter of the time consumed and the distance traveled, but rests primarily on whether the employer's or the employee's purpose is being served.' Such determination is a question of fact for the Commission." *Id.* (quoting *Miller v. Sleight & Hellmuth Ink Co.,* 436 S.W.2d 625, 628 (Mo. banc 1969)).

■ Here, Claimant testified at the ALJ hearing that on Saturday, August 6, 2005, he picked up a load of insulation "at [Employer's] request" from Etowan, Tennessee, and was set to deliver it to Ennis, Texas. Claimant then traveled along Interstate 75 through Dalton, Georgia, where he injured his ankle when exiting his truck "at a motel that [he] was checking into." He stated he was stopping at the motel per Department of Transportation requirements because he needed his "requisite number of hours of rest ..." required by

regulation. The following morning, he called Employer to advise it of his ankle injury and he was "off duty on August 7th and 8, 2005, still in Dalton, Georgia," because he "knew what time [his] load had to be delivered" and he "had plenty of time" so he just stopped for the weekend in Dalton. On the morning of August 9, 2005, Claimant proceeded toward Texas on Interstate 20 and he remained on Interstate 20 "through Alabama, Mississippi, Louisiana into Texas." When he entered Texas, he took I–45 "and delivered [his] load" on August 10, 2005.

Claimant testified that during his time with Employer he was told Employer "would pay [him] per mile for the shortest route from pickup to the location of delivery" and Employer often "g[a]ve [him] some indication of what a practical route might be." He testified he was never told he was required to take the route suggested by Employer, there was nothing in the policy manual about routing, and he knew other drivers who did not take the route suggested by Employer. He stated he was required on each trip to fill out a trip settlement report, which he completed during the trip to show the route and mileage traveled. Claimant stated that based on the trip settlement reports Employer would have been aware that drivers, including himself, often did not take the route suggested by Employer. He stated his only understanding of how he was supposed to travel was that he had to purchase gasoline at certain gas stations where Employer "was authorized" and he only got paid mileage based on the shortest, practical route, which was typically the one suggested by Employer.

Claimant testified he "did not have assigned routes" to drive and that his being in Dalton, Georgia, was, thus, not a deviation from any route because he was not a "routed" driver. He acknowledged Em-

ployer's suggested route for the trip from Etowan to Ennis and that his route took him "[a] little bit" southeast and was approximately 50 to 75 miles longer in total.[8] Claimant testified he chose his particular route because he has "traveled that route quite a bit before" and he felt "it was quicker time-wise ... than ... going the way that [Employer] claimed they routed [him]." He stated that Interstate 75 and Interstate 20 were "better" highways than the route suggested by Employer. He stated he chose to continue on Interstate 75 instead of taking Interstate 24 and Interstate 59 because "there's always a lot of work going on [on Interstate 59]. You go through a lot of small towns. And it was just made into an interstate; it was a state highway before." He stated he was not "on some personal junket or any other business" when he went to Dalton, Georgia, and that his selected route just happened to take him there.

Walter D. Smith ("Mr. Smith"), the Director of Safety and Compliance for Employer, testified that "when a truck driver at [Employer] doesn't follow the practical or suggested route ... [Employer] still only pays on the shortest route mileage that it calculated." He stated he was unsure if other drivers deviated from the practical route, but it was "possible" due to roadwork and other issues that the drivers might choose to take a route other than the practical route. Mr. Smith stated the goal was to get the loads delivered in the "most economically" practical way and the practical route, which is calculated by a computer, is often the shortest route. Mr. Smith stated at the time of Claimant's injury he "didn't think [the fact that Claimant was injured while not traveling the practical route] was relevant...." He

stated it wasn't until later that he began to question why Claimant was in Dalton, Georgia, at the time of his accident. He stated it would have been "more efficient" for Claimant to have taken the practical route because "it was shorter miles."

Based on the foregoing evidence, in finding Claimant's accident arose in the course of and scope of his employment, the Commission found Employer's "testimony at trial was that Claimant was given a 'practical' or 'suggested' route; however, there was insufficient substantial and competent evidence presented at the hearing that any route provided by [Employer] was a 'required' route." The Commission noted that "[e]ven if it was, [Claimant's] choice to travel a highway with which he was more familiar, and which he felt to be safer, would not constitute a deviation under Missouri law."

In *Swillum v. Empire Gas Transport, Inc.*, 698 S.W.2d 921, 923 (Mo.App.1985), the claimant, a truck driver, overloaded the propane tanker he was driving such that he knew it was in violation of company rules and state regulations relating to weight limits. The claimant was set to drive a route "specifically designated by the employer" from Jefferson City, Missouri, to West Plains, Missouri. *Id.* Knowing there was a weight station along that route and wanting to "avoid confrontation at the weight station, [the] claimant deviated from his designated route ..." and journeyed to West Plains along a different path. *Id.* The claimant "denied he did this for any purpose of his own" and stated "the difference in mileage between the two routes is insignificant." *Id.* While on the non-specified route, the claimant "lost control of his truck and it overturned...." *Id.* The Commission

---

**8.** Employer's "Practical Route" suggested Claimant take Interstate 75 to Interstate 24; Interstate 24 to Interstate 59; Interstate 59 to Interstate 459; Interstate 459 to Interstate 20; and Interstate 20 to Interstate 45.

found, over the employer's objections, that the claimant's injuries arose within the scope of his employment. Specifically, the Commission held:

'[i]n order for a deviation to remove a claimant from his course of employment, it must be shown that the deviation was aimed at reaching some specific personal objective. If an employee deviates from his assigned route for some reason having nothing to do with a private purpose, but perhaps merely in the exercise of his own judgment or preference as to the most desirable route, takes a route other than that prescribed by his employer, this should not be considered a deviation.'

'The evidence is uncontradicted that claimant opted to take Missouri State Route 137 instead of his regular route of U.S. 63 in order to avoid a weight station. The difference in mileage between the two routes was insignificant. The claimant was not in pursuit of a personal mission, but opted instead to take a different route as a matter of judgment.' 'This type of case, there being no personal deviation involved, is really not a deviation issue, but, is, as also contended by [the] employer/insurer, a problem of a violation of the employer's instructions. However, the Commission cannot conclude that the claimant's decision to take Missouri State Route 137, admittedly in violation of the direction of his employer, removed claimant from his sphere of employment. The violation of instruction consisted of merely taking a different route while remaining in the course of performance of active duties, to wit: driving the load of propane gas to Horseshoe Bend, Arkansas. Even though [the] claimant entered an unauthorized route, he was still on an errand in fulfillment of his duties at a time his employer could expect him to be working. The claimant was not disobeying

the 'when' or 'what' but the 'how' part of his job. Disobedience as to 'how' the work is performed does not remove the activity from the sphere of employment.'

*Swillum*, 698 S.W.2d at 928.

On appeal, this Court agreed with the findings of the Commission. The *Swillum* court recited:

'Mere disobedience of an order as to the detail of the work in hand or the mere breach of a rule as to the manner of performing the work are not generally sufficient to deprive an employee of his right to compensation so long as he does not go out of the sphere of his employment.'

*Id.* at 927–28 (quoting *Fowler v. Baalmann, Inc.*, 361 Mo. 204, 234 S.W.2d 11, 17 (Mo. banc 1950)). Thus, the appellate court found that

when the accident occurred, [the claimant] was driving the transport he was hired to drive, hauling the cargo he was employed to haul, and heading toward the destination assigned by the employer. Highway 137, while not the road designated by the employer, was nonetheless a logical one for [the] claimant to use in view of his admitted purpose of avoiding the weight station.

*Id.* at 928–29. Accordingly, the *Swillum* court found that the Commission could have reasonably found that the claimant's injuries arose out of and in the course of his employment. *Id.*

Here, as in *Swillum*, 698 S.W.2d at 927–28, at the time of Claimant's injury he "was driving the transport he was hired to drive, hauling the cargo he was employed to haul, and heading toward the destination assigned by [Employer]." Claimant testified he had no personal reason to take the particular route he took and that he did so because he felt the route was safer and he was more familiar with it. Fur-

ther, he testified that he had never been told he was required to follow the practical route and that if Employer had reviewed his trip settlement reports it would have known he often did not take the practical route. There was no prejudice to Employer in Claimant's failure to use the practical route and Claimant got his assigned load to its destination on time despite his injury. The mere fact that Claimant took a route different than that suggested by Employer is not sufficient to prove he was on a personal errand in that he was still serving Employer's purpose at the time of the injury. *Swillum*, 698 S.W.2d at 927–28. Furthermore, Employer offered no evidence that Claimant had a personal motive to visit Dalton, Georgia, nor did it offer evidence that it was company policy to always use the practical route. Whether there was deviation by Claimant is a question of fact for the Commission, *Smith*, 59 S.W.3d at 565, and the Commission was well within its province to believe the testimony of Claimant. *Martin*, 220 S.W.3d at 844. There was sufficient competent and substantial evidence from which the Commission could find there was no deviation by Claimant and that he was within the course and scope of his employment with Employer at the time of his work-related accident. Employer's point is denied.

■ Employer's last point relied on maintains the Commission erred in finding Claimant "provided proper notice to [Employer] under the law," because the evidence "showed that [Claimant] failed to provide actual or written notice of his accident to [Employer] within the time allowed by law, and that [Employer] was prejudiced by the lack of timely notice."

At the hearing before the ALJ, Claimant testified that he injured his right ankle on August 6, 2005, and when he called Employer's dispatcher the following morning he informed the dispatcher he had injured himself. He told the dispatcher his "ankle had swollen up. [He] couldn't stand up and put any weight on it." He stated he spoke to the dispatcher three times that day "letting him know what was going on" "as far as [his], ankle, how [he] was feeling what [he] had done." Claimant related he was informed by the dispatcher "that [he] needed to call [his] fleet manager … Monday morning and also report the accident to him." On Monday, August, 8, 2005, Claimant phoned his fleet manager, Gabe Walker ("Mr. Walker"), and reported his injury.[9] He advised Mr. Walker he was having increasing problems with his ankle, and Mr. Walker was concerned if Claimant would be able to continue with the load, but Claimant told him he was confident he "would get the load there on time."

Claimant related he completed the load to Ennis, but he began to develop symptoms in his back "approximately a week later" when he was delivering another load. He stated he began having "increasing pain in the lower back, and the right leg, in the upper right leg in the thigh, and the outside of the knee, and the calf." He also related he was experiencing "numbness" in those areas and "pain like needles and pins." Then on September 6, 2005, as he "was getting out of the truck [his] right leg just literally folded underneath [him], and [he] fell." He reported the incident to Mr. Walker, who advised him to meet with Mr. Smith and fill out an injury report.

9. Mr. Walker wrote in an e-mail which was introduced at the hearing that Claimant did contact him on the date of the injury and spoke with him about his back problems between the date of the injury and the date Claimant filed his injury report with Mr. Smith.

Claimant met with Mr. Smith on September 13, 2005; filled out an injury report; and made a written statement.[10]

Mr. Smith testified that he filled out Claimant's report of injury on September 12, 2005, after receiving a phone call from Claimant, and he met with Claimant for the first time about his injury on September 13, 2005. He stated Claimant made a written statement regarding the injury at the meeting on September 13, 2005, but he did not ask for treatment at that time. Mr. Smith testified that all employees of Employer are required to sign a policy statement relating to notification of Employer of work-related accidents and that Claimant had also signed this document.[11] Mr. Smith explained that personal injuries are to be reported verbally and followed up with a written statement.

The Commission found that "[w]ritten notice to an Employer of a work-related accident is also not a prerequisite for recovery of cost of medical services when the Employer suffers no prejudice from the lack notice." It went on to find that there was substantial and competent evidence that Claimant gave Employer actual "notice of Claimant's accident" and that notice was proper.

Section 287.420, provides:

No proceedings for compensation under this chapter shall be maintained unless written notice of the time, place and nature of the injury, and the name and address of the person injured, have been given to the employer as soon as practicable after the happening thereof but not later than thirty days after the accident, unless the [D]ivision or the [Commission] finds that there was good cause for failure to give the notice, or that the employer was not prejudiced by failure to receive the notice. No defect or inaccuracy in the notice shall invalidate it unless the [C]omission finds that the employer was in fact misled and prejudiced thereby.

"The purpose of this section is to give the employer timely opportunity to investigate the facts surrounding the accident and, if an accident occurred, to provide the employee medical attention in order to minimize the disability." *Soos v. Mallinckrodt Chemical Co.,* 19 S.W.3d 683, 686 (Mo.App. 2000). "However, the failure to give timely written notice may be excused if the

---

10. Claimant's written statement set out that he "didn't seek medical attention [at] the time [of his ankle injury] because [he] thought it was just a sprain." He noted he "did call Jessie [at] [Employer] Dispatch [and] *inform* him of what had happened [and] to tell him [he] was going to wrap [and] ice [his] ankle. [He] was told to keep [Employer] informed of [his] status." Claimant wrote that "[o]n Sunday, [he] called Russ [at] [Employer] Dispatch shortly after 1pm to check in [and] also related to him what had happened" and he "was back in the truck running on Mon. or Tues." He noted that "[b]y the next weekend [he] was experiencing some pain in lower back [and] tingling sensation [and] cramping in right leg. [He] assumed [he] had pulled a muscle *in lower* back or had a pinched nerve." He stated he had gone to the doctor and following an MRI he was diagnosed with

"2 bulging or herniated discs ... [and] some scarring from previous surgery...." Claimant reported he returned to work, but still experienced pain.

11. Employer's "Accident/Damage Reporting Policy" states:

All ... injuries must be reported directly to the safety department. Reporting such events to dispatch or telling someone in the shop does not relieve you of the responsibility to report directly to safety. Reports by telephone or in person must be followed up by a written report of the incident within five days of the occurrence.
\* \* \*
Failure to report a personal injury as soon as possible could jeopardize your workers compensation eligibility.

Commission finds either that there was good cause for the failure or that the failure did not prejudice the employer." *Id.* "A claimant may demonstrate lack of prejudice where 'evidence of actual notice was uncontradicted, admitted by the employer, or accepted as true by the fact-finder.'" *Pursifull v. Braun Plastering & Drywall*, 233 S.W.3d 219, 223 (Mo.App.2007) (quoting *Willis v. Jewish Hosp.*, 854 S.W.2d 82, 85 (Mo.App.1993)). "If the employer does not admit actual knowledge, the issue becomes one of fact." *Soos*, 19 S.W.3d at 686. "If, however, the employee cannot show either written notice or actual knowledge, the employee bears the burden to show and obtain the Commission's finding that no prejudice to the employer resulted." *Pursifull*, 233 S.W.3d at 223.

While section 287.420, clearly requires Claimant to provide written notice of his injury to Employer within thirty days, "[i]f the employee produces substantial evidence that the employer had actual knowledge, the employee thereby makes a prima facie showing of absence of prejudice which shifts the burden of showing prejudice to the employer." *Soos*, 19 S.W.3d at 686. In the present matter, Claimant met his burden of proving he gave actual notice to Employer, but Employer failed to offer any evidence of prejudice. In this connection, it is settled law that in matters such as this, "[n]otice or knowledge is imputed to the employer when it is given to a supervisory employee." [12] *Dunn v. Hussman Corp.*, 892 S.W.2d 676, 681 (Mo.App.1994). Here, there was testimony and evidence that Claimant notified Employer of his accident in the days immediately following his fall. The morning after the accident Claimant informed his dispatcher about the accident and then continued to speak with him throughout that weekend. Claimant's cell phone records were entered into evidence showing numerous phone calls to Employer's dispatch office during the weekend following the accident. On Monday, August 9, 2005, Claimant spoke with his fleet manager, Mr. Walker, about the injury and a document signed by Mr. Walker evidencing that discussion was admitted into evidence. He continued to tell Mr. Walker about his lingering pain issues and informed him immediately after he collapsed on September 9, 2005. It was not until that time that Mr. Walker encouraged him to speak to Mr. Smith about filing an injury report, which Claimant did when he returned to Employer's offices. Claimant clearly provided actual notice of his injury to Employer by advising his supervisors of his injury. Further, Claimant's injury occurred on August 6, 2005, and he telephoned Mr. Smith about filing an injury report on September 12, 2005—a mere 6 days after the 30 day limit imposed by section 287.420. Employer offered little or no probative evidence as to how it was prejudiced by Claimant's failure to file written notice within the statutory time period.

The Commission did not err in finding Claimant properly notified Employer of his injury. Point denied.

Claimant's appeal, No. 28686, is dismissed. We affirm the Commission's

---

12. *See also Shaffer v. St. John's Reg. Health Ctr.*, 943 S.W.2d 803, 806 (Mo.App.1997) (finding there was actual notice where the claimant failed to file written notice but "informed her supervisor ..." of her pain and "continued to inform her supervisor of the pain during [her] entire medical treatment"); *Patterson v. Eng. Eval. Inspections, Inc.*, 913 S.W.2d 344, 347 (Mo.App.1995) (holding there was actual notice where the claimant "made diligent efforts to notify his employer of a work-related injury" and the claimant informed three supervisory employees of his injury and need for medical treatment).

Temporary Award in Employer's appeal, No. 28698.

RAHMEYER and BURRELL, JJ., concur.